James Oliver Romine Jr. Pro Se Litigant
12494 Ironwood Dr.
Yuma, Arizona 85367
928-276-1844
jromine2445@gmail.com

X FILED        ___ LODGED
___ RECEIVED   ___ COPY

MAR 0 4 2016

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES OLIVER ROMINE JR. <br><br> Plaintiff <br><br> v. <br><br> JAMES NICHOLAS STANTON <br><br> Defendant | Case No.: CV-16-00604-PHX-JJT <br><br><br> **COMPLAINT FOR CIVIL ACTION PERSONAL INJURY VIA LIBEL PER SE AND LIBEL PER QUOD** <br><br> TRIAL BY JURY: No |

## THE PARTIES TO THIS COMPLAINT

### A.    The Plaintiff

Name                    James O. Romine Jr.

Street Address          12494 Ironwood Dr.

City and County         Yuma, Yuma County

State and Zip Code      Arizona 85367

Telephone Number        928-276-1844

E-mail Address          jromine2445@gmail.com

**B.      The Defendant**

| | |
|---|---|
| Name | James Nicholas Stanton |
| Job or Title | Game Journalist  - The Jimquisition.com |
| Street Address | 1004 Riverchase North Dr. |
| City and County | Brandon, Rankin County |
| State and Zip Code | Mississippi 39047 |
| Telephone Number | 601-331-4858 |
| E-mail Address | MorphineJim@gmail.com |

## JURISDICTION AND VENUE

☐ Federal question        ☑ Diversity of citizenship

1.      The Plaintiff, James Oliver Romine Jr is a resident of the State of Arizona and a Citizen of the United States.

2.      The Defendant, James Nicholas Stanton, a United States Person and is currently a resident of Brandon, Mississippi. It is uncertain at this time if The Defendant is a Citizen of the United States. The US District Court of Arizona has Jurisdiction and Venue over The Defendant for the following reasons:

a. International Shoe Co. v. Washington, 326 US 310 (1945) states: The Defendant sells merchandise which he profits from in the State of Arizona through online sale. The Defendant with these sales, establishes minimum contact requirements.

b. International Shoe Co. v. Washington, 326 US 310 (1945) states: The Defendant charges a minimum $1 subscription fee per month from subscribers to The Defendants Patreon.com of which there are almost 4000 subscribers some of which are in The State of Arizona causing continual periodic financial contact with the State.  The Defendant with these sales, establishes minimum contact requirements.

d. According to Calder v. Jones 465 US 783 - Supreme Court 1984, The Defendant has directed damaging statements at The Plaintiff causing in excess of $2,000,000 damages to the Plaintiff, an Arizona resident. Jurisdiction and Venue are legitimate due to these facts. The Defendant knew or should have known that the statements would cause damage and that

such damage would occur in Arizona. This damage was not

incidental or remote from the business of The Defendant.

e.    42 U.S.C. § 1985 section 3, states that if 2 or more persons

depriving persons of rights or privileges, in this case right of

due care and right of not being subject to others bearing false

witness, If two or more persons in any State or Territory conspire

on the highway (Internet) for purpose of depriving equal protection

under the law.

f.    28 U.S.C. § 1332 provides that in excess of $75,000 in damages

and the parties are of different states that the US District Court

of Arizona has jurisdiction over the state court system.

These facts instill that The Defendant has personal jurisdiction within the

State of Arizona. The defamatory statements reach into the State of

Arizona directly aimed at The Plaintiff. The Defendant advertises his

Patreon site through his Youtube and other media outlets which is visible

to viewers inside the State of Arizona and this advertisement and financial

contact directly leads viewers in Arizona to the libelous statements

involved in this case. Both Patreon.com's (a) and Shark Robot LLC's (b)

4

are used as distribution and subscriber based financial instruments within The State of Arizona. The damage depicted below is market evaluated according to average provable product value at the time of The Defendant assaulted the Plaintiff.

3.    The Amount in Controversy:

Direct Product Damage: $2,261,000.

Emotional, reputational, and financial distress: $4,300,000

Punitive damage request: $5,000,000

Total: $10,761,000

## COMPLAINT

1.  According to 28 U.S. Code § 4101 and 42 U.S.C. § 1985 section 3: When The Defendant falsely accused The Plaintiff and caused damage to reputation, damage to product, loss of product, and causing severe emotional distress to The Plaintiff, The Plaintiff has right to receive restitution for these damages. The statements that have been made on the Internet by The Defendant have resulted in criticism and condemnation by the public towards The Plaintiff. These statements have been made in reckless disregard for duty of care that all United States Persons are legally required to follow. In this Complaint, thejimquisition.com article:

http://www.thejimquisition.com/2015/09/digital-homicide-and-the-case-of-the

-sockpuppet-developers/ where portions of the Libel Per Se occurred will be referred to here forward as The Article. For the purposes of this Complaint, The Defendants twitter feed at https://twitter.com/JimSterling will be referred to as Tweeted. The Plaintiff's business partner Steam/Valve Corporation will be referred to here forward as The Distributor. Evidence for all information contained in Items 1 through 20 are available even if they have been removed from the Internet at this point.

2. The Plaintiff took direct damage through the use of his personal name via multiple postings of false statements in regards to claims of impersonation of ECC Games, a Polish Company based out of an apartment in Poland, on twitter.com and thejimquisition.com by The Defendant. The products and advertising lost to The Plaintiff exceeds $2 million in market value at the time of damages. The products are listed as Operation: Vile Strike, MAS, Assault on Orion 7, Coastal Carnage, Bombing Run, ELT, Grimmehz's Journey, Hover Tank Attack, Primate, Starship: Nova Strike, and two pack/bundles that could have been formed with these games. Their forced removal can be shown on Oct 13th 2015 on greenlightupdates.com which tracks greenlight submissions and removals. Primate was hidden prior to the damages caused and then was forced to be removed at the same time as the other titles. This cannot be seen on greenlightupdates.com as the item was hidden. See Attachment A.

## COUNT 1 LIBEL PER SE

3.  On September 24th, 2015, The Defendant states "It's also worth noting that Galactic Hitman's artwork has been taken from elsewhere, just like the initial art for The Slaughtering Grounds was." A link is provided to deviant art. The initial Slaughtering Grounds art was not taken from this site. It was a free upload to a wallpaper site and was a derivative work, which when this was discovered that the artist did not have full rights to put it up for free, it was immediately removed. The Article falsely states that The Plaintiff used an image that The Plaintiff did not have rights to. After the initial burst of tens of thousands of views on The Article, The Defendant posted a modification that "maybe" the Plaintiff did not steal it but the damage especially in context with the rest of The Article and can be seen in the comments section. No apology, no proper retraction, and no special attention is given. Receipt is included in Attachment B. Image of download is included in Attachment C. The statement is in Attachment D. The Defendant was previously notified where all artwork the Plaintiff purchases 3 months prior to the false statements in this complaint and did not even take the time to attempt to locate the image before posting the false statement. Negligence is plainly shown here: "not knowing it was sold on Shutterstock".

## COUNT 2 LIBEL PER SE

4.  On September 24th, 2015, the Defendant states in The Article: "Here, we've seen it lead to potential legal trouble for the folks who rebranded and accidentally

defamed a completely different studio." The Defendant claims The Plaintiff has

defamed a studio which is false and tarnishes The Plaintiffs good name. Every

Click Counts, the Trade Name of The Plaintiff was plainly visible on the

developer account since its creation here:

https://steamcommunity.com/profiles/76561198219137364. See Attachments E

and F. In Attachment E it can be seen that as soon as The Plaintiff contacted ECC

Games Poland and The Plaintiff changed the name to be more clear and avoid

any confusion this however occurred after defamatory comments were made and

magnified by The Defendant. The Plaintiff offered this even though ECC Games

Poland had no legal registration in any US State nor any official Trademark with

the USPTO.

## **COUNT 3 LIBEL PER SE**

5.  On September 24th, 2015, The Defendant states in The Article "Apparently you

don't need to prove your company's legitimacy or even existence, since it's all

based on usernames." This is misleading and portraying false light on The

Plaintiff. The Defendant himself is not incorporated in anyway that The Plaintiff

can find in records. It is believed Defendant himself is using Trade Names - Jim

Sterling and The Jimquisition. The Defendant makes the above statement in a

negative way to make it seem to his audience that normal business practice is

somehow being abused. This does significant credibility damage to The Plaintiff

in the eyes of the gaming public, The Distributor, and peers as these users came

and blamed The Plaintiff on active forums on The Distributor's site. See

Attachment E.

## COUNT 4 LIBEL PER SE

6.   On September 24th, 2015, the Defendant states in The Article: "It (The Polish

ECC Games) also has a Twitter account which, prior to now, has no history of

mentioning either Devil's Share nor Galactic Hitman" these were the two Games

branded under Every Click Counts. At no time did The Plaintiff attempt to

imitate ECC Games. There were no links to Polish ECC Games websites, no

links to its games, and no use of any of its developers or workers names. ECC

Games Poland is using an abbreviation for Eccentricity (which was even shown

at the bottom of their webpage until recently deleted) and has no legal business

formation in the United States. No contact was attempted to the Plaintiff prior to

posting of the defamatory material that caused the damages stated. The material

was posted to purposefully cause controversy, damage, and portray The Plaintiff

as having done something illegal. See Attachment G, now, and Attachment H,

previous to January 2016.

## COUNT 5 LIBEL PER SE

7.   On September 24th, 2015, the Defendant states in The Article: "chicanery may

lead it into very real legal trouble" see Attachment I. The basis of this statement

is false as there was no attempt to impersonate another company. The company

supposedly (ECC Games) impersonated is incorporated in Poland and has no

legal right to that name in the United States as they are not registered in any US

State and have no official Trademark registered with the USPTO. It would have

been legally open for usage in The United States had The Plaintiff intended on

doing so. A generic Madrid Protocol registration was registered as "Roll in the

hole" on 2012-10-09 by ECC Games CEO Piotr Watrucki. Attachment K

displays this information.

## COUNT 6 LIBEL PER QUOD

8.  On September 24th, 2015, The Defendant states in The Article: "Being as sly as

    the Wet Bandits" comparing The Plaintiff to an incompetent thief (reference to

    the movie Home Alone). In context with the stolen image and wrongdoing of

    corporate name impersonation further tarnishes The Plaintiff's reputation. Please

    see Attachment I.

## COUNT 7 LIBEL PER QUOD

9.  When not using the Plaintiff's given name, The Defendant often uses a

    modification to the Plaintiff's last name as "Romino" attempting some form of

    relation to a mob or mafia family - a criminal reference. This is done in many

    locations and videos as well as The Article.

## COUNT 8 LIBEL PER SE

10. On September 24th, 2015, The Defendant Tweeted a link to The Article exposing 122000+ users to false statements: "I wrote an article on everything we know about the Digital Homicide / ECC Games weirdness." See Attachment L.

## COUNT 9 LIBEL PER SE

11. On September 24th, 2015, The Defendant Tweeted: "According to the email, this ECC Games is pursuing legal action against Digital Homicide for using its name. Not enough popcorn on Earth." This statement shows the false statements as entertainment for The Defendants viewers so that The Defendant can profit from it via view advertisements and subscriber generation. The Defendant's action spread the original defamation from the original ECC Games Poland post from less than a 100 Twitter followers to over 120 thousand. The added comment makes it his own and it is restated in thejimquisition.com article. There is no discernible difference between the Plaintiff and Every Click Counts Studios or Digital Homicide Studios LLC due to continual usage by The Defendant via Youtube videos and articles that use the Plaintiff's good name over the past year. The games lost were under the Every Click Counts Trade Name representing The Plaintiff directly. See Attachment M.

12. The Defendant profits from subscribership and ad revenue and is monetarily motivated to provide controversial topics especially about The Plaintiff who has been the target of a larger percentage of the Defendant's materials, more than most of the Triple A multi-million dollar game companies currently subject to

The Defendants attacks.

13. The Plaintiff's Trade Name logo plainly displayed Every Click Counts and it can
even be plainly seen in one of the Defendants videos shortly after the defamation
occurred. Link for Primate provided:
https://www.youtube.com/watch?v=_weZ2cXeswA  The pasting of the logo is
seen now over the thumbnail of the video this was changed with no explanation
as to why after a majority of traffic already hit the video and the damage was
done. This image was placed there weeks to months after the majority of viewers
had already seen the video. See Attachment N. This is provided as evidence only
and the contents of the video are not being disputed in this case at this time. The
Plaintiff does not have the legal or financial backing to make contest against The
Defendant's billion dollar Multi-channel network which which is in competition
with The Plaintiff on The Distributor.

## **COUNT 10 LIBEL PER SE**

14. On the 24th of September, 2015, The Defendant Tweeted: "Jesus Christ, I just
got an email from ECC Games saying they're NOT the ECC Games Digital
Homicide named itself after. This is weeeeird." The Defendant is acting shocked
here to make it seem as if The Defendant has discovered something - when in
fact not enough research has been performed and no attempt to contact The
Plaintiff has been made. The Plaintiff legally used a Trade Name and did not
attempt to imitate a foreign company that had no registered rights in the United

States. The Every Click Counts image has been on the developer account since its creation March 23rd, 2015. This statement was made two weeks after ECC Games Poland followed The Defendant on Twitter which The Plaintiff alleges shows prior communication with no attempt to contact The Plaintiff. See Attachment O.

15. Three days after almost destroying The Plaintiff, The Defendant finally asks The Defendant's subscribers to stop harassing others when The Plaintiff's partner had asked The Defendant to do this three months prior. The Defendant essentially posts his material the viewers see it and immediately form a riot/witch hunt where they go and attack the particular products store page.  See Attachment Q.

## INCIDENT CAUSING LOST PRODUCT DAMAGE

16. The Article and the statements Tweeted by The Defendant caused a Skype conversation between the Plaintiff and The Distributor. The Defendant makes all the accusing statements with the intent of depicting The Plaintiff in a malicious and defamatory manner, in reckless disregard for truth, and with negligence of not performing proper research as would be required of any normal person in regards to duty of care. The Article convinces the public and The Distributor that The Plaintiff is guilty of multiple false accusations.

17. During the Skype conversation on October 13 2015 with The Distributor representatives Conor Malone and Tom Giardino, The Plaintiff was told that The Distributor was going to stop doing business with the Plaintiff. All of the

Plaintiff's games were to be removed from sale. Tom Giardino and Conor Malone had already disabled the Plaintiff's developer account and were in the process of removing all of the Plaintiff's products which would destroy all of the Plaintiff's income when the Plaintiff begged The Distributor not to delete the Plaintiff's income and that the Plaintiff would give all of the Plaintiff's current future products on Greenlight up to avoid losing everything. The Plaintiff managed to convince The Steam Representative, Tom, that The Plaintiff had not done anything illegal and The Plaintiff was a victim of false statements. Tom Giardino accepted this sacrifice. This sacrifice was made under extreme duress as The Plaintiff was about to lose over six thousand hours of coding and model work in addition to the products actually lost, all of The Plaintiff's income, and suffer extreme damage in the eyes of the public to the point of being unable to do business under The Plaintiff's good name.

18. Many of the The Defendant's subscribers are fanatical, young, and impressionable. These subscribers are easy to mislead and The Defendant specifically states on Youtube that The Defendant knows The Defendant can do so at time 15:30 to 16:00 minutes into the video below The Defendant States: "But if there is one thing I have learned about game journalism, it's that you can pretty much say anything about anything, and ahh, people will swallow it, you just ascribe some sort of artistic meaning to things, whether that was the intention or not, someone will believe you."

https://www.youtube.com/watch?v=Wa02mXimzqk.

## COUNT 10 LIBEL PER SE

19. The date of this comment below cannot be seen as it has now been deleted. Evidence was saved in a screenshot. On The Defendant's ask.fm/jimquisition channel, The Defendant states "Yeah it was, because Digital Homicide is more than just a bad developer. It's had a history of shady and dishonest behavior, behavior it was continuing under its new name. The very fact it was damaging the reputation of another company is entirely bad enough, to say nothing of its continued efforts to push games through Greenlight via unscrupulous means. I will not deny the pleasure I take in sticking it to them, but their name is mud for a reason, and people deserve to know who's really selling them products." This statement assists in defining the malicious intent of The Defendant. This statement has been deleted from ask.fm/jimquisition channel sometime between December 2015 and January 2015 over 3 months after it was posted. The Plaintiff's 'name being mud' is only through The Defendant's repeated videos, articles, and statements on Twitter. These statements continually magnified minor user problems that every Developer has on The Distributor's platform and turns them into an all out barrage of attacks. The 'shady behavior' is referring to Keys for votes, the day The Plaintiff was almost Destroyed by The Defendants Twitter and Article statements a game called "Suits" was admitted through greenlight having given 25000 keys away for vote traffic just a week prior and hundreds of game companies use keys as promotional and marketing devices, it is a commonly used method of advertisement. The Defendant's 'shady behavior'

statement is also The Plaintiff simply attempting to rebrand to avoid harassment caused by The Defendants media outlets. The statement that The Plaintiff is damaging the reputation of another company is false and maliciously negligent without regard for the truth. Deletion of the comment shows intent to cover the facts of the aggressive act without any regard for the damage it has done. Screenshot image is included in attachment R. The harassers guided by The Defendant and The Defendant attacked The Plaintiff repeatedly and forcing The Plaintiff to attempt to rebrand and then The Plaintiff was made to look as if doing something illegal when doing so just to try to work in peace. All products can be refunded if the customer is not satisfied. All but one product (the newest) is under 3 dollars with most being a dollar. A majority go on sale for less than .50 cents. Cost of ownership is extremely low and some individuals even profit off of the game purchase through game card sales (cards are similar to baseball cards but virtual goods).

20. Attachment U and V show that even though The Defendant is aware of the damage being done to his video targets especially after the results on The Plaintiff, The Defendant continues to perform the same actions as this initial complaint is being finalized. On 2-15-16 The Defendant posted another video on Cat Simulator a recently published game on The Distributor's site resulting in a heavy assault on that products store page where users accuse theft and harass the developer of that product relentlessly. There are dozens of examples similar to this available on the net with many products destroyed immediately by

harassment that ensues. At the end of The Defendants video he encourages his viewers to investigate and they have accused that Cat Simulators developer of theft with improper investigation into the source of the products used and assumptions stated as facts rather than actual researched facts. Video link: https://www.youtube.com/watch?v=19ch-cbnNts.

## **RELIEF DEMAND**

Attachment Z shows product submissions and then product removal under duress. A confidential version of this attachment with monetary amounts can be requested if it is agreed upon that the document will be sealed according to standard court procedures. When the court finds in favor of The Plaintiff in the Complaint of Defamation for Libel Per Se and/or Libel Per Quod the Plaintiff requests the following judgement for the Libel Per Se in reference to both the Plaintiff's good name, the Plaintiff's business practice, and its damage in the eyes of consumers, for damage spread through other Youtubers, and writers following in the Defendant's lead. For emotional and financial distress, pain and suffering, and abuse at the hands of The Defendant's subscribers magnified by the false statements depicted in this case:

- Full reimbursement for 5 years of lost product value at the per game value at time of loss: $19,000 per product at 12 products for 5 years = $1,140,000.

- Half reimbursement for trailing depreciating product value for the 5th to 10th years of product life: $9,500 per product at 12 products for 5 years = $570,000.

- Loss of $1000 in advertising and 50,000 keys used to advertise the lost products these were current products that now these individuals will never purchase and no marketing benefit was gained due to the losses. $51,000.

- 4 Month loss of key access (this has been restored by The Distributor as of the end of February 2015) to existing products limiting ability to advertise current and new products during critical market time: $500,000.

- Emotional and financial distress including extreme financial strife resulting in loss of quality of life, loss of time to visit with family, immediately upon libel striking: $500,000.

- Long term costs of time and effort to recover The Plaintiff's name and deal with defamation locations across the net for the rest of The Plaintiff's life. $3,000,000.

- Time loss dealing with this case and research involved including the almost 1 thousand hours the Plaintiff spent performing research on law to represent appropriately in court (this reduced game production output by a minimum of five titles putting the Plaintiff in a worse financial position). $800,000.

- Punitive damages in the amount of $5 million to discourage The Defendant, and all others that followed suit with The Defendants actions, from performing similar actions in the future. A minimum of 20 other former victims such as The Plaintiff have been singled out and destroyed for profit in a manner which replaces their copyright created material with a video from The Defendant while using the target's content.

- Apologies in place of every offending article and video for a period of no less than 5 years. An apology video in the primary youtube location on The Defendant's channel front for a period of no less than 5 years.

Dated this 16th day of February 2016
James Oliver Romine Jr.
12494 Ironwood Dr.
Yuma, Arizona 85367