James Oliver Romine Jr. Pro Se Litigant
12494 Ironwood Dr.
Yuma, Arizona 85367
928-276-1844
jromine2445@gmail.com



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES OLIVER ROMINE JR.<br><br>Plaintiff<br><br>v.<br><br>JAMES NICHOLAS STANTON<br><br>Defendant | Case No.: CV-16-00604-PHX-JJT<br><br><br><br>**MOTION TO FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

### MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, The Movant

requests that The Court receive this First Amended Complaint  as Attachment 1 for

clarification, formatting, and support of The Plaintiff's Complaint. Rule 15(a) provides

that leave to amend shall be freely given when justice requires.  The Court should

allow Plaintiff's motion to Amend as modifications have been reduced as much as

possible and integrated as best capable with the original complaint to avoid undue

delay. The attached Amended Complaint has been redlined according to requirements.

Amended complaint components are listed below:

General reorganization and ordering of Attachments to a more appropriate organization and lettering.

Addition of The Defendant's counsel information.Separation of original Count 1 into Counts 1, 11, and 12 due to further analysis revealing other accusations of theft for Libel Per Se and the improper retraction itself constituting Libel Per Se as The Defendant was aware and did not perform proper due diligence to 100% verify, apologize, and fully retract with proper attention, the damaging comments. Count 1 was split to 1, 11, and 12 to minimize redlining of the entire complaint down to a lesser number of modifications.

Updated link as The Article has been archived which changed its http web address.

Multiple clarification additions have been added providing context and/or definition for existing statements in the original complaint.

Modification to damages as they have changed since the initial submission of this case for action. New information has come to light in regards to reputational damage in relation to future limitations of The Plaintiff to enter the high level Game Development industry due to The Defendant's actions.

Addition of new Attachment E defines public damage being caused by subscribers of The Defendant and is directly related to damage caused by The Article and is relevant to the case. Addition of new Attachment H is relevant for providing an

example of another legitimate company name that could be abbreviated in a similar manner to ECC Games Poland. Attachment S provides an example of promotional requirements for The Plaintiff and The Plaintiff's competitors vying for Greenlight Slots. This additional attachment is to give better context and relevance to the Greenlight submission process.

Addition of definition of chicanery for definition and context purposes.

Addition of references to ECC Games Poland Linkedin and Facebook pages actually being listed under Eccentricity.

Addition of related and relevant information that ECC Games Poland publishes under multiple names.

Addition of references to paragraphs in Attachments for clarity.

Addition to Count 9 that legal action was publicized for damaging effect when no legal action was ever pursued as there were no bounds for such action.

Addition of assertion that online distribution is a significantly different trade channel than the mobile market.

Addition of date correction on Count 9.

Count 7 Libel Per Quod has been eliminated for simplification of case.

Count 6 Libel Per Quod has been upgraded to Libel Per Se for reference to The Plaintiff being a thief.

Removal of damages in related to products for two reasons:

1. The burden of proof involves so much statistical and marketing data that would need to be placed under seal that it is not feasible for seeking resolution to these losses due to the hardship involved in proving said damages.

2. The product damages complicate the case to such a factor that it could extend the time of resolution when a speedy outcome to the case is more beneficial for The Plaintiff on reputational damages as harassment due to the defendant's actions is an ongoing issue.

RESPECTFULLY SUBMITTED  this 26 day of April 2016

By: _____

James Oliver Romine Jr. Pro Se.
12494 Ironwood Dr.
Yuma, Arizona 85367
jromine2445@gmail.com
928-276-1844

## CERTIFICATE OF SERVICE

 I hereby certify that on April 26, 2016, This Motion For Leave to File The Plaintiff's First Amended Complaint was Certify Mailed via the U.S. Postal Office to:

HARTMAN TITUS PLC
Bradley P. Hartman
John D. Titus
7114 E. Stetson Drive, Suite 205
Scottsdale, Arizona 85251-3250
*Attorneys for Defendant*

AND James Nicholas Stanton
1004 Riverchase North Dr.
Brandon, Mississippi 39047

James Oliver Romine Jr. Pro Se

James Oliver Romine Jr. Pro Se Litigant
12494 Ironwood Dr.
Yuma, Arizona 85367
928-276-1844
jromine2445@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES OLIVER ROMINE JR.<br><br>Plaintiff<br><br>v.<br><br>JAMES NICHOLAS STANTON<br><br>Defendant | Case No.: 2:16-cv-00604-JJT<br><br>~~COMPLAINT FOR CIVIL ACTION~~<br>**AMENDED COMPLAINT 1 FOR CIVIL ACTION**<br>**PERSONAL INJURY VIA LIBEL**<br>**PER SE** ~~AND LIBEL PER QUOD~~<br><br>TRIAL BY JURY: No |

## THE PARTIES TO THIS COMPLAINT

### A.   The Plaintiff

| | |
|---|---|
| Name | James O. Romine Jr. |
| Street Address | 12494 Ironwood Dr. |
| City and County | Yuma, Yuma County |
| State and Zip Code | Arizona 85367 |
| Telephone Number | 928-276-1844 |

1

E-mail Address        jromine2445@gmail.com

**B.    The Defendant**

Name                    James Nicholas Stanton

Job or Title            Game Journalist  - The Jimquisition.com

Street Address        1004 Riverchase North Dr.

City and County      Brandon, Rankin County

State and Zip Code  Mississippi 39047

Telephone Number  601-331-4858

E-mail Address        MorphineJim@gmail.com

**JURISDICTION AND VENUE**

☐  ~~Federal question~~          ☐  ~~Diversity of citizenship~~

This case classifies under Diversity of citizenship

1.    The Plaintiff, James Oliver Romine Jr is a resident of the State of Arizona

and a Citizen of the United States.

2.    The Defendant, James Nicholas Stanton, a United States Person and is

currently a resident of Brandon, Mississippi. It is uncertain at this time if

The Defendant is a Citizen of the United States. The US District Court of

Arizona has Jurisdiction and Venue over The Defendant for the following

reasons:

a.  International Shoe Co. v. Washington, 326 US 310 (1945) states: The Defendant sells merchandise which he profits from in the State of Arizona through online sale. The Defendant with these sales, establishes minimum contact requirements.

b.  International Shoe Co. v. Washington, 326 US 310 (1945) states: The Defendant charges a minimum $1 subscription fee per month from subscribers to The Defendants Patreon.com of which there are almost 4000 subscribers some of which are in The State of Arizona causing continual periodic financial contact with the State.  The Defendant with these sales, establishes minimum contact requirements.

d.  According to Calder v. Jones 465 US 783 - Supreme Court 1984, The Defendant has directed damaging statements at The Plaintiff causing in excess of ~~$2~~ $3,000,000 damages to the ~~damage~~ Plaintiff, an Arizona resident. Jurisdiction and Venue are legitimate due to these facts. The Defendant knew or should

have known that the statements would cause damage and that

such damage would occur in Arizona. This damage was not

incidental or remote from the business of The Defendant.

e.     42 U.S.C. § 1985 section 3, states that if 2 or more persons

depriving persons of rights or privileges, in this case right of

due care and right of not being subject to others bearing false

witness, ~~If two or more persons~~ in any State or Territory conspire

on the highway (Internet) for purpose of depriving equal protection

under the law~~.~~ , the person injured by those conspirators have right

to recover damages caused by such interference.

f.     28 U.S.C. § 1332 provides that in excess of $75,000 in damages

and the parties are of different states that the US District Court

of Arizona has jurisdiction over the state court system.

These facts instill that The Defendant has personal jurisdiction within the

State of Arizona. The defamatory statements reach into the State of

Arizona directly aimed at The Plaintiff. The Defendant advertises his

Patreon site through his Youtube and other media outlets which is visible

to viewers inside the State of Arizona and this advertisement and financial

4

contact directly leads viewers in Arizona to the libelous statements involved in this case. Both Patreon.com's (a) and Shark Robot LLC's (b) are used as distribution and subscriber based financial instruments within The State of Arizona. The damage depicted below is market evaluated according to average provable product value at the time of The Defendant assaulted the Plaintiff.

3.     The Amount in Controversy:

~~Direct Product Damage: $2,261,000.~~

~~Emotional, reputational, and financial distress: $4,300,000~~

~~Punitive damage request: $5,000,000~~

~~Total: $10,761,000~~

Compensatory damages: $2,550,000.

Emotional, reputational, and financial hardship damages: $4,000,000

Punitive damages: $6,000,000

Total:  $12,550,000

## COMPLAINT

4.     According to 28 U.S. Code § 4101 and 42 U.S.C. § 1985 section 3: When The Defendant falsely accused The Plaintiff and caused damage to reputation, damage to product, loss of product, and causing severe emotional distress to The Plaintiff, The Plaintiff has right to receive restitution for these damages. The statements that have been

made on the Internet by The Defendant have resulted in criticism and condemnation by the public towards The Plaintiff. These statements have been made in reckless disregard for duty of care that all United States Persons are legally required to follow. In this Complaint, thejimquisition.com article:

~~http://www.thejimquisition.com/2015/09/digital-ho micide-and-the-case-of-the-sockpuppet-developers/~~

http://www.thejimquisition.com/digital-homicide-and-the-case-of-the-sockpuppet-developers/ (Address updated as it has moved what is believed to be automated archiving) where portions of the Libel Per Se occurred will be referred to here forward as The Article. For the purposes of this Complaint, The Defendants twitter feed at https://twitter.com/JimSterling will be referred to as Tweeted. The Plaintiff's business partner Steam/Valve Corporation will be referred to here forward as The Distributor. Evidence for all information contained in Items 1 through 20 are available even if they have been removed from the Internet at this point.

    5.    ~~The Plaintiff took direct damage through the use of his personal name via multiple postings of false statements in regards to claims of impersonation of ECC Games, a Polish Company based out of an apartment in Poland, on twitter.com and thejimquisition.com by The Defendant. The products and advertising lost to The Plaintiff exceeds $2 million in market value at the time of damages. The products are listed as Operation: Vile Strike, MAS, Assault on Orion 7, Coastal Carnage, Bombing Run, ELT, Grimmehz's Journey, Hover Tank Attack, Primate, Starship: Nova Strike,~~

~~and two pack/bundles that could have been formed with these games. Their forced~~ ~~removal can be shown on Oct 13th 2015 on greenlightupdates.com which tracks~~ ~~greenlight submissions and removals. See Attachment A.~~ Primate was hidden prior to the damages caused ~~due to a video by The Defendant the day after the events forcing this cause of action~~ and then was forced to be removed at the same time as the other titles. This cannot be seen on greenlightupdates.com as the item was hidden. See Attachment A. Damage for Greenlight product loss is no longer being sought to expedite reputational resolution to this case.

### ~~COUNT 1 LIBEL PER SE~~

~~On September 24th, 2015, The Defendant states "It's also worth noting that Galactic Hitman's artwork has been taken from elsewhere, just like the initial art for The Slaughtering Grounds was." A link is provided to deviant art. The initial Slaughtering Grounds art was not taken from this site. It was a free upload to a wallpaper site and was a derivative work, which when this was discovered that the artist did not have full rights to put it up for free, it was immediately removed. The Article falsely states that The Plaintiff used an image that The Plaintiff did not have rights to. After the initial burst of tens of thousands of views on The Article, The Defendant posted a modification that "maybe" the Plaintiff did not steal it but the damage especially in context with the rest of The Article and can be seen in the comments section. No apology, no proper retraction, and no special attention is given. Receipt is included in Attachment B. Image of download is included in Attachment C.~~

~~The statement is in Attachment D. The Defendant was previously notified where all~~

~~artwork the Plaintiff purchases 3 months prior to the false statements in this complaint~~

~~and did not even take the time to attempt to locate the image before posting the false~~

~~statement. Negligence is plainly shown here: "not knowing it was sold on~~

~~Shutterstock".~~

## **COUNT 1 LIBEL PER SE**

6.      The Plaintiff restates and adopts paragraphs 1 through 5 and 9 through

26.  On a date between September 24th and September 26th, 2015, The Defendant

placed a modification to The Article that states: [Note: Initially I suggested Digital

Homicide just took the image from a Deviantart artist without permission, not knowing

it was also sold on Shutterstock. The text has been edited to reflect this.] See

Attachment B.

7.      The original statement was modified and not visible to The Plaintiff. The

Defendant posted this insufficient modification even though The Defendant had been

told twice at this point, once by a subscriber of The Defendant and again in an

interview. The Defendant was again told by phone two days after the Articles

publication, that the Plaintiff did not steal either image but the damage especially in

context with the rest of The Article and can be seen in the comments section. No

apology, no proper retraction, and no special attention is given.  The statement can be

seen in Attachment N acknowledging that a subscriber of The Defendant has noted that

the rights could have been purchased. Still no apology is given and no proper

retraction is made. Receipt is included in Attachment C. Image of download is included

in Attachment D. The Defendant was previously notified on July 2nd 2015,where all

artwork the Plaintiff purchases almost 3 months prior to the false statements in this

complaint regarding theft and The Defendant did not even take the time to attempt to

locate the image before posting the false statements (this is possible to do within a few

minutes with Google Image search).

    8.    Negligence is plainly shown here: "not knowing it was sold on

Shutterstock". The receipt in Attachment C was the second large subscription

purchased out of six subscription licenses. Download dates show the last time the

image was downloaded not the first.

### COUNT 2 LIBEL PER SE

    9.    The Plaintiff restates and adopts paragraphs 1 through 8 and 10 through

26. On September 24th, 2015, the Defendant states in The Article: "Here, we've seen it

lead to potential legal trouble for the folks who rebranded and accidentally defamed a

completely different studio." The Defendant claims The Plaintiff has defamed a studio

which is false and tarnishes The Plaintiffs good name. See Attachment F. Every Click

Counts, the Trade Name of The Plaintiff was plainly visible on the developer account

since its creation here: https://steamcommunity.com/profiles/76561198219137364. See

Attachments E and F. In Attachment E G it can be seen that as soon as The Plaintiff

contacted ECC Games Poland and The Plaintiff changed the name to be more clear and avoid any confusion this however occurred after defamatory comments were made and magnified by The Defendant. <u>The Image in Attachment G has been there and on The Plaintiff's Every Click Counts Facebook page since creation on March 23 2015.</u> The Plaintiff offered this even though ECC Games Poland had no legal registration in any US State nor any official Trademark with the USPTO. <u>Attachment I first paragraph shows the statement by The Defendant from The Article.</u> <u>In Attachment H can be seen a different unrelated company created in New Jersey in 2009 called Eccentric Games LLC. The Plaintiff asserts that the ECC Games name is a malformed usage of an abbreviation that applies to many possible acronyms and abbreviations. A single contact with The Plaintiff was all that was required to clarify this prior to public statements and damages done. The Plaintiff would happily have performed actions for clarity. The Defendant maliciously used ECC Games (Poland) malformed name as a tool to direct damage and controversy at The Plaintiff for personal profit to The Defendant.</u>

## <u>COUNT 3 LIBEL PER SE</u>

10. <u>The Plaintiff restates and adopts paragraphs 1 through 9 and 11 through 26.</u> On September 24th, 2015, The Defendant states in The Article "Apparently you don't need to prove your company's legitimacy or even existence, since it's all based on usernames." <u>See Attachment I, first paragraph.</u> This <u>statement</u> is misleading and portraying false light on The Plaintiff. The Defendant himself is not incorporated in

anyway that The Plaintiff can find in records. It is believed Defendant himself is using

Trade Names - Jim Sterling and The Jimquisition. The Defendant makes the above

statement in a negative way to make it seem to his audience that normal business

practice is somehow being abused. This does significant credibility damage to The

Plaintiff in the eyes of the gaming public, The Distributor, and peers as these users

came and blamed The Plaintiff on active forums on The Distributor's site. ~~See~~

~~Attachment E.~~ Millions of users use Trade Names across the net to sell their goods, on

The Distributor, Amazon, Ebay, and tens of thousands of other sites. Every user on

The Distributor can use their Steam Account as a Trade Name account to trade cards,

and virtual goods to other users or sell them. Many of these virtual goods cost more

than The Plaintiff's games.

## COUNT 4 LIBEL PER SE

11.    The Plaintiff restates and adopts paragraphs 1 through 10 and 12 through

26.  On September 24th, 2015, the Defendant states in The Article: "It (The Polish

ECC Games) also has a Twitter account which, prior to now, has no history of

mentioning either Devil's Share nor Galactic Hitman" these were the two Games

branded under Every Click Counts. See Attachment J. At no time did The Plaintiff

attempt to imitate ECC Games. There were no links to Polish ECC Games websites, no

links to its games, and no use of any of its developers or workers names. ECC Games

Poland is using an abbreviation for Eccentricity (which was even shown at the bottom

of their webpage until recently deleted) and has no legal business formation in the

11

United States. No contact was attempted to the Plaintiff prior to posting of the

defamatory material that caused the damages stated. The material was posted to

purposefully cause controversy, damage, and portray The Plaintiff as having done

something illegal. ~~See Attachment G, now, and Attachment H, previous to January~~

~~2016.~~ See Attachment K, now. See Attachment L, previous to January 2016. ECC

Games Poland has a greenlight game Tower Dwellers submitted under Steam User

name piotrwat a combination of ECC Games Poland/Eccentricity Games CEO's first

and last name. The game is not labeled under the name ECC Games Sp. z O.O. nor

Eccentricity Games and has been sitting in The Distributors submission system

approved for over a year and a half. ECC Games Poland/Eccentricity Games distributes

its titles under Chillingo by Electronic Arts and Noodlecake Studios to attract attention

to their mobile products. The Plaintiff asserts that ECC Games does not have any

significant notoriety in the PC Distribution Market that would give any cause to imitate.

## COUNT 5 LIBEL PER SE

12.    The Plaintiff restates and adopts paragraphs 1 through 11 and 13 through

26. On September 24th, 2015, the Defendant states in The Article: "chicanery may

lead it into very real legal trouble" see Attachment I last paragraph. ~~The basis of this~~

~~statement is false as there was no attempt to impersonate another company.~~ This

statement is false as there was no attempt to impersonate another company. The usage

of "chicanery" defines The Plaintiff as using "trickery, deception, deceit,

underhandedness, and fraud". The company supposedly (ECC Games) impersonated is

incorporated in Poland and has no legal right to that name in the United States as they are not registered in any US State and have no official Trademark registered with the USPTO. It would have been legally open for usage in The United States had The Plaintiff intended on doing so. A generic Madrid Protocol registration was registered as "Roll in the hole" on 2012-10-09 by ECC Games CEO Piotr Watrucki. ~~Attachment K displays this information.~~ Attachment M displays this information. There is no WIPO entry for ECC Games nor Eccentricity Games. The name ECC Games was recently switched to from Eccentricity Games at the beginning of 2015. A redirect exists from an Eccentricity Facebook page to ECC Games, and the ECC Games profile on Linkedin has the account name of Eccentricity. The Defendant's comment specifically aims at damaging The Plaintiff's reputation in a closing statement.

## COUNT 6 LIBEL PER SE

13.    The Plaintiff restates and adopts paragraphs 1 through 12 and 14 through 26. On September 24th, 2015, The Defendant states in The Article: "Being as sly as the Wet Bandits" comparing The Plaintiff to an incompetent thief (reference to the movie Home Alone). In context with the false accusations of stolen images and wrongdoing of corporate name impersonation further tarnishes The Plaintiff's reputation. Please see Attachment I third paragraph.

## ~~COUNT 7 LIBEL PER QUOD~~

~~14.    When not using the Plaintiff's given name, The Defendant often uses a~~

~~modification to the Plaintiff's last name as "Romino" attempting some form of relation~~

~~to a mob or mafia family - a criminal reference. This is done in many locations and~~

~~videos as well as The Article.~~

## COUNT 7 LIBEL PER SE

14.    The Plaintiff restates and adopts paragraphs 1 through 13 and 15 through

26. On September 24th, 2015, The Defendant Tweeted a link to The Article exposing

122000+ users to false statements: "I wrote an article on everything we know about the

Digital Homicide / ECC Games weirdness." ~~See Attachment L.~~ See Attachment N. As

this statement is made on a different media outlet and directs 122000+ users to false

statements in The Article it is a separate count of libel per se.

## COUNT 8 LIBEL PER SE

15.    The Plaintiff restates and adopts paragraphs 1 through 14 and 18 through

26. On September 24th, 2015, The Defendant Tweeted: "According to the email, this

ECC Games is pursuing legal action against Digital Homicide for using its name. Not

enough popcorn on Earth." See Attachment O.  No legal action was ever taken as there

were no bounds for legal action and The Defendant's media actions used to portray this

situation in a negative way that has directly damaged The Plaintiff. This statement

shows the false statements as entertainment for The Defendants viewers so that The

Defendant can profit from it via view advertisements and subscriber generation. The

Defendant's action spread the original defamation from the original ECC Games Poland

post from less than a 100 Twitter followers to over 120 thousand. The added comment makes it his own and it is restated in The Article ~~thejimquisition.com article~~. There is no discernible difference between the Plaintiff and Every Click Counts Studios or Digital Homicide Studios LLC due to continual usage by The Defendant via Youtube videos and articles that use the Plaintiff's good name over the past year. The games lost were under the Every Click Counts Trade Name ~~representing The Plaintiff directly~~ and other Trade Names representing The Plaintiff directly. . ~~See Attachment M.~~

16.     The Defendant profits from subscribership and ad revenue and is monetarily motivated to provide controversial topics especially about The Plaintiff who has been the target of a larger percentage of the Defendant's materials, more than most of the Triple A multi-million dollar game companies currently subject to The Defendants attacks.

17.     The Plaintiff's Trade Name logo plainly displayed Every Click Counts and it can even be plainly seen in one of the Defendants videos shortly after the defamation occurred. Link for Primate provided: https://www.youtube.com/watch?v=_weZ2cXeswA  The pasting of the logo is seen now over the thumbnail of the video this was changed with no explanation as to why after a majority of traffic already hit the video and the damage was done. This image was placed there weeks to months after the majority of viewers had already seen the video. See Attachment P. ~~See Attachment N~~. This is provided as evidence only and the contents of the video are not being disputed in this case at this time. The Plaintiff does

not have the legal or financial backing to make contest against The Defendant's billion

dollar Multi-channel network which which is in competition with The Plaintiff on The

Distributor's platform.

## COUNT 9 LIBEL PER SE

18.   The Plaintiff restates and adopts paragraphs 1 through 17 and 20 through

26. On the 24th of September, 2015, The Defendant Tweeted: "Jesus Christ, I just got

an email from ECC Games saying they're NOT the ECC Games Digital Homicide

named itself after. This is weeeeird." See Attachment Q. The Defendant is acting

shocked here to make it seem as if The Defendant has discovered something - when in

fact not enough research has been performed and no attempt to contact The Plaintiff

has been made. The Plaintiff legally used a Trade Name and did not attempt to imitate

a foreign company that had no registered rights in the United States. The Every Click

Counts image has been on the developer account since its creation March 23rd, 2015.

This statement was made two weeks after ECC Games Poland followed The Defendant

on Twitter which The Plaintiff alleges shows prior communication with no attempt to

contact The Plaintiff with up to 2 weeks of time to do so. ~~See Attachment O.~~ The

Plaintiff also asserts that The PC online distribution market is a separate trade channel

from the mobile market involving significantly different skill sets, coding styles,

marketing, and having significantly different communication and device channels.

19.   ~~Three days after almost destroying The Plaintiff,~~ On October 8th 2015,

16

two weeks after almost destroying The Plaintiff.The Defendant finally asks The

Defendant's subscribers to stop harassing others when The Plaintiff's partner had asked

The Defendant to do this three months prior in the video

https://www.youtube.com/watch?v=ZJdflnvS8to . The Defendant essentially posts his

material the viewers see it and immediately form a riot/witch hunt where they go and

attack the particular products store page. ~~See Attachment Q.~~ Another example of this

harassment issue is shown in Attachment V.

## ~~INCIDENT CAUSING LOST PRODUCT DAMAGE~~

~~21.     The Article and the statements Tweeted by The Defendant caused a~~

~~Skype conversation between the Plaintiff and The Distributor. The Defendant makes~~

~~all the accusing statements with the intent of depicting The Plaintiff in a malicious and~~

~~defamatory manner, in reckless disregard for truth, and with negligence of not~~

~~performing proper research as would be required of any normal person in regards to~~

~~duty of care. The Article convinces the public and The Distributor that The Plaintiff is~~

~~guilty of multiple false accusations.~~

~~22.     During the Skype conversation on October 13 2015 with The Distributor~~

~~representatives Conor Malone and Tom Giardino, The Plaintiff was told that The~~

~~Distributor was going to stop doing business with the Plaintiff. All of the Plaintiff's~~

~~games were to be removed from sale. Tom Giardino and Conor Malone had already~~

~~disabled the Plaintiff's developer account and were in the process of removing all of the~~

17

~~Plaintiff's products which would destroy all of the Plaintiff's income when the Plaintiff~~
~~begged The Distributor not to delete the Plaintiff's income and that the Plaintiff would~~
~~give all of the Plaintiff's current future products on Greenlight up to avoid losing~~
~~everything. The Plaintiff managed to convince The Steam Representative, Tom,  that~~
~~The Plaintiff had not done anything illegal and The Plaintiff was a victim of false~~
~~statements. Tom Giardino accepted this sacrifice. This sacrifice was made under~~
~~extreme duress as The Plaintiff was about to lose over six thousand hours of coding~~
~~and model work in addition to the products actually lost, all of The Plaintiff's income,~~
~~and suffer extreme damage in the eyes of the public to the point of being unable to do~~
~~business under The Plaintiff's good name.~~

20.    Many of the The Defendant's subscribers are fanatical, young, and impressionable. These subscribers are easy to mislead and The Defendant specifically states on Youtube that The Defendant knows The Defendant can do so at time 15:30 to 16:00 minutes into the video below The Defendant States: "But if there is one thing I have learned about game journalism, it's that you can pretty much say anything about anything, and ahh, people will swallow it, you just ascribe some sort of artistic meaning to things, whether that was the intention or not, someone will believe you."
https://www.youtube.com/watch?v=Wa02mXimzqk.

**COUNT 10 LIBEL PER SE**

21. The Plaintiff restates and adopts paragraphs 1 through 20 and 23 through 26. The date of this comment below cannot be seen as it has now been deleted. Evidence was saved in a screenshot. On The Defendant's ask.fm/jimquisition channel, The Defendant states "Yeah it was, because Digital Homicide is more than just a bad developer. It's had a history of shady and dishonest behavior, behavior it was continuing under its new name. The very fact it was damaging the reputation of another company is entirely bad enough, to say nothing of its continued efforts to push games through Greenlight via unscrupulous means. I will not deny the pleasure I take in sticking it to them, but their name is mud for a reason, and people deserve to know who's really selling them products." This statement assists in defining the malicious intent of The Defendant. This statement has been deleted from ask.fm/jimquisition channel sometime between December 2015 and January 2015 over 3 months after it was posted. The Plaintiff's 'name being mud' is only through The Defendant's repeated videos, articles, and statements on Twitter. These statements continually magnified minor user problems that every Developer has on The Distributor's platform and turns them into an all out barrage of attacks. The 'shady behavior' is referring to Keys for votes, the day The Plaintiff was almost Destroyed by The Defendants Twitter and Article statements a game called "Suits" was admitted through greenlight having given 25000 keys away for vote traffic just a week prior and hundreds of game companies use keys as promotional and marketing devices, it is a commonly used method of advertisement. The Defendant's 'shady behavior' statement is also The Plaintiff simply attempting to rebrand to avoid harassment caused by The Defendants

media outlets. The statement that The Plaintiff is damaging the reputation of another company is false and maliciously negligent without regard for the truth. Deletion of the comment shows intent to cover the facts of the aggressive act without any regard for the damage it has done. Screenshot image is included in attachment R.  <u>Two other screenshots are also available of this material which are admissible per Title 28 Rule 1003 and this Attachment R is a contributing Count to this cause of action.</u> The harassers guided by The Defendant and The Defendant attacked The Plaintiff <u>repeatedly from November 2014 through to the day after Summons</u> ~~and~~ forcing The Plaintiff to attempt to rebrand and then The Plaintiff was made to look as if doing something illegal when doing so just to try to work in peace. All products can be refunded if the customer is not satisfied. All but one product (the newest) is under 3 dollars with most being a dollar. A majority go on sale for less than .50 cents. Cost of ownership is extremely low and some individuals even profit off of the game purchase through game card sales (cards are similar to baseball cards but virtual goods). <u>In Attachment S can be seen an email from a Greenlight web advertiser orlygift.com. The Defendant is portraying The Plaintiff as 'shady' for simply driving traffic to The Plaintiff's products. Orly gifts offers up to 5 thousand votes worth of traffic for 300 pounds to get a game through the Greenlight submission process. The only way to compete with others is to generate enough traffic to Greenlight submissions.</u>

      22.    ~~Attachment U and V~~ Attachments T and U show that even though The Defendant is aware of the damage being done to his video targets especially after the results on The Plaintiff, The Defendant continues to perform the same actions as this

initial complaint is being finalized. See Attachment V. On 2-15-16 The Defendant

posted another video on Cat Simulator a recently published game on The Distributor's

site resulting in a heavy assault on that products store page where users accuse theft

and harass the developer of that product relentlessly. There are dozens of examples

similar to this available on the net with many products destroyed immediately by

harassment that ensues. At the end of The Defendants video he encourages his viewers

to investigate and they have accused that Cat Simulators developer of theft with

improper investigation into the source of the products used and assumptions stated as

facts rather than actual researched facts. Video link:

https://www.youtube.com/watch?v=19ch-cbnNts.

## COUNT 11 LIBEL PER SE

23.    The Plaintiff restates and adopts paragraphs 1 through 22, 25, and 26. On

September 24th, 2015, The Defendant states "It's also worth noting that Galactic

Hitman's artwork has been taken from elsewhere, just like the initial art for The

Slaughtering Grounds was. You can see the original imagery here,". The last sentence

being a link to Deviant Art Galactic Hitman image. This suggests that The Plaintiff's

Slaughtering Grounds image was also taken from Deviant Art. See Attachment B.

24.    The Article falsely states that The Plaintiff intentionally used an image

that The Plaintiff did not have rights to.  A link is provided to the Deviant Art website.

The initial Slaughtering Grounds art was not taken from this site.  This can be seen as a

separate accusation of theft by The Defendant from the Galactic Hitman image.  The

Slaughtering Grounds box art was a free upload to a wallpaper site and was labeled free to use and modify, which when it was discovered within 24 hrs that the artist did not have full rights to put it up for free use, it was immediately removed. The Defendant specifically states this fact in a video on his primary Youtube Channel Slot where it is said that the image used was from a wallpaper site. In the context of The Article, The Defendant states the image comes from Deviant Art, which is false. The original artwork received 40 thousand free views of web traffic and when The Plaintiff attempted to contact the artist there was no response. The implication that the art is taken from deviant art portrays to the reader that it was illegally used.

**COUNT 12 LIBEL PER SE**

25.   The Plaintiff restates and adopts paragraphs 1 through 24. On September 24th, 2015, The Defendant states in The Article: "It's also worth noting that Galactic Hitman's artwork has been taken from elsewhere, just like the initial art for The Slaughtering Grounds was. You can see the original imagery here, which Faker-ECC may have purchased from Shutterstock. Does DH even have a single artist?" See Attachment B.

26.   The original statement has been modified yet still implies that The Plaintiff has not paid for the use of this material after The Defendant was specifically told in an interview that images are licensed through Shutterstock. The Defendant did not ask for a receipt, made no attempt to contact The Plaintiff or his partner to verify

22

Case 2:16-cv-00604-JJT   Document 11   Filed 04/27/16   Page 28 of 31

information prior to initial posting of the defamatory material. The Defendant did not

make effort to verify facts and has done so in reckless disregard for duty of care and

has done so with malicious intent.

## RELIEF DEMAND

Attachment ~~Z~~ <u>W</u> shows product submissions and then product removal under duress.
~~A confidential version of this attachment with monetary amounts can be requested if it~~
~~is agreed upon that the document will be sealed according to standard court~~
~~procedures.~~ When the court finds in favor of The Plaintiff in the Complaint of

Defamation for Libel Per Se and/or Libel Per Quod the Plaintiff requests the following

judgement for the Libel Per Se in reference to both the Plaintiff's good name, the

Plaintiff's business practice, and its damage in the eyes of consumers, for damage

spread through other Youtubers <u>due to The Defendant's actions.</u> ~~and writers following~~
~~in the Defendant's lead.~~ For emotional and financial distress, pain and suffering, and

abuse at the hands of <u>The Defendant and</u> The Defendant's subscribers magnified by

the false statements depicted in this case:

- ~~aFull reimbursement for 5 years of lost product value at the per game value at~~
  ~~time of loss: $19,000 per product at 12 products for 5 years = $1,140,000.~~
- ~~Half reimbursement for trailing depreciating product value for the 5th to 10th~~
  ~~years of product life: $9,500 per product at 12 products for 5 years = $570,000.~~

23

- ~~Loss of $1000 in advertising and 50,000 keys used to advertise the lost products, these were current products that now these individuals will never purchase and no marketing benefit was gained due to the losses. $51,000.~~

- ~~4 Month loss of key access (this has been restored by The Distributor as of the end of February 2015) to existing products limiting ability to advertise current and new products during critical market time: $500,000.~~

- Emotional and financial distress including extreme financial strife resulting in loss of quality of life, loss of time to visit with family, immediately upon libel striking: $500,000.

- <u>For increased difficulty (if ever) of getting a job related to the Gaming industry which has been a goal of The Plaintiff since beginning game design and using the marketing, programming, and game design experience learned and studied by The Plaintiff to create, 10 years of employment at a senior programming position at a large game company. The Plaintiff can now never get a job using The Plaintiff's good name in the gaming industry with a triple A level company without jeopardizing that company's reputation due to The Defendant's actions: $1,250,000 direct position related damages. The Plaintiff has a history of earning in excess of $97 thousand a year in an economically depressed area.</u>

- ~~Long term costs of time and effort to recover The Plaintiff's name and deal with defamation locations across the net for the rest of The Plaintiff's life. $3,000,000.~~

- Time loss dealing with this case and research involved including the ~~almost~~ <u>over</u> 1 thousand hours the Plaintiff spent performing research on law to represent

appropriately in court (this reduced game production output by a minimum of ~~five~~ ten titles putting the Plaintiff in a worse financial position). $800,000.

- Emotional and financial distress including extreme financial strife resulting in loss of quality of life, loss of time to visit with family, immediately upon libel striking, including missing several important family events that will be unrecoverable. Emotional, mental, and financial strain on The Plaintiff. For many months the first thing The Plaintiff had to do every morning was look and see if The Defendant had posted another video or article that would cause some form of damage to The Plaintiff. This created a constant sense of dread and misery for over a year to The Plaintiff: $2,000,000. This could increase as the case moves onwards due to publicity in The Plaintiff's market.

- Long term costs of time and effort to recover reputational damage to The Plaintiff's name and deal with defamation locations across the net due to The Defendant's actions for the rest of The Plaintiff's life. $2,000,000.

- Punitive damages in the amount of $6,000,000 to discourage The Defendant from performing similar actions in the future. A minimum of 20 other former victims such as The Plaintiff have been singled out and destroyed for profit in a manner which replaces their copyright created material with a video from The Defendant while using the target's content. The Plaintiff has increased this request to deter The Defendant and others from doing this to developers such as The Plaintiff.

- Total Adjusted Relief Request: $12,550,000.

- ~~Punitive damages in the amount of $5 million to discourage The Defendant, and all others that followed suit with The Defendants actions, from performing similar actions in the future. A minimum of 20 other former victims such as The Plaintiff have been singled out and destroyed for profit in a manner which replaces their copyright created material with a video from The Defendant while using the target's content.~~

- Apologies in place of every offending article and video for a period of no less than 5 years. An apology video in the primary youtube location on The Defendant's channel front for a period of no less than 5 years.

~~Dated this 16th day of February 2016~~
~~James Oliver Romine Jr.~~
~~12494 Ironwood Dr.~~
~~Yuma, Arizona 85367~~

RESPECTFULLY SUBMITTED  this 26 day of April 2016

By: _James Oliver Romine Jr. Pro Se._
James Oliver Romine Jr. Pro Se.
12494 Ironwood Dr.
Yuma, Arizona 85367
jromine2445@gmail.com
928-276-1844

Attachment 1

26