Bradley P. Hartman (#017263)
John D. Titus (#012912)
**HARTMAN TITUS** PLC
7114 E. Stetson Drive, Suite 205
Scottsdale, AZ 85251-3250
Phone: (480) 659-0019
Fax: (480) 659-3304
Email: bhartman@hartmantitus.com
        jtitus@hartmantitus.com
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Oliver Romine Jr., | No. 2:16-cv-00604-JJT |
| Plaintiff, | **MOTION TO DISMISS FOR LACK OF STANDING, LACK OF PERSONAL JURISDICTION, AND FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** |
| vs. | |
| James Nicholas Stanton, | (Oral Argument Requested) |
| Defendant. | |

Defendant James Nicholas Stanton moves to dismiss the Complaint brought against him by Plaintiff James Oliver Romine Jr. based on (1) Plaintiff's lack of standing as an individual to bring claims on behalf of his Arizona limited liability company, Digital Homicide Studios L.L.C. ("DHS"); (2) a lack of personal jurisdiction over Defendant in Arizona; and (3) Plaintiff's failure to state a claim for defamation pursuant to Fed.R.Civ.P. 12(b)(6). This motion is supported by the attached Declaration of James N. Stanton and the exhibits thereto.

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ................................................................................................ 1

II.  PLAINTIFF DOES NOT HAVING STANDING. ......................................... 3

III. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT ................. 4

    A. The Court Does Not Have General Jurisdiction over Defendant ............................... 4

    B. The Court Does Not Have Specific Jurisdiction over Defendant ............................... 5

IV. DEFENDANT HAS FAILED TO STATE A CLAIM FOR LIBEL .............................. 10

    A. The Court May Take Into Account Material Not Alleged in the Complaint .............. 11

    B. Determining Whether a Statement is an Assertion of Fact ......................................... 13

    C. The Article and Twitter Statements Are Not Defematory ......................................... 14

        1.   The Statement at "Count 1" is Not Libel Per Se. ......................................... 15

        2.   The Statements at "Counts 2-4" are Not Libel Per Se. ................................. 16

        3.   The Statement at "Count 5" is Not Libel Per Se. ......................................... 19

        4.   The Statement at "Count 6" is Not Libel Per Quod. ..................................... 19

        5.   The Statement at "Count 7" is Not Libel Per Quod. ..................................... 20

        6.   The Statement at "Count 8" is Not Libel Per Se. ......................................... 20

        7.   The Statement at "Count 9" is Not Libel Per Se. ......................................... 21

        8.   The Statement at "Count 10" is Not Libel Per Se. ....................................... 21

        9.   The Statement at Second "Count 10" is Not Libel Per Se ............................ 22

V.  CONCLUSION. ............................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A. Uberti & C. v. Leonardo*, 892 P.2d 1354 (Ariz. 1995)..........................................................4

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) ................ 5, 6, 7

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................................4

*Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 730 P.2d 178 (App. 1985) ....................... 10

*Burger King v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ................ 7

*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).......................... 5, 6, 8

*Casualty Assurance Risk Insurance Brokerage Co. v. Dillon*, 976 F.2d 596 (9th Cir. 1992) ..... 9

*Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010)................................................................ 10

*ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001) ....................... 16

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......................................... 10

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ...................................... 6, 9

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997)............................................. 4, 5

*Doe v. American Nat'l Red Cross*, 112 F.3d 1048 (9th Cir. 1997)..............................................4

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) ................................................ 13, 19, 20, 22

*George Kessel Int'l, Inc. v. Classic Wholesales, Inc.*, No. CV-07-323-PHX-SMM, 2007 WL
  3208297 (D. Ariz. Oct. 30, 2007) .......................................................................................... 7

*Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999)............................................... 18

*Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989) ....................... 10

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986)..........4

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990) .................. 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................4

*Herman v. Cataphora, Inc.*, 730 F.3d 460 (5th Cir. 2013) ........................................................ 9

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)................................................................... 12

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)......................................... 12

*Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036 (9th Cir. 1998) ............................................. 12

*Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U. S. 84, 98 S.Ct.
    1690, 56 L.Ed.2d 132 (1978) ..................................................................................... 7

*Lawrence v. Evans*, 573 So. 2d 695 (Miss. 1990)................................................................ 11, 20

*Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ..................... 18

*Lewis v. Time Inc.,* 710 F.2d 549 (9th Cir. 1983) ................................................................. 18

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)........ 13, 18

*Morris v. Warner*, 160 Ariz. 55, 770 P.2d 359 (App. 1988)...................................................... 10

*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) .......... 18

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995).................................. 4

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ......................................... 4

*Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002).............................................. passim

*Rudin v. Dow Jones & Co.*, 557 F. Supp. 535 (S.D.N.Y. 1983)................................................. 12

*Standing Comm. on Discipline of the United States Dist. Court v. Yagman*, 55 F.3d 1430 (9th
    Cir. 1995) ................................................................................................................... 13

*Tennenbaum v. Ariz. City Sanitary Dist.*, No. CV-10-02137-PHX-GMS (D. Ariz. 2013)  11, 12,
    20

*Turner v. Devlin*, 174 Ariz. 201, 848 P.2d 286 (1993) ............................................................ 10

*Underwager v. Channel 9 Australia*, 69 F.3d 361 (9th Cir. 1995) ................................ 11, 13, 18

*Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990)..................................................... 13, 21

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982) ..................................................................................................... 3

*Walden v. Fiore,* 571 U.S. __, 134 S. Ct. 1115, 2014 WL 700098 (2014)................................. 6

*Yetman v. English*, 168 Ariz. 71, 811 P.2d 323 (1991)........................................................... 11

**Statutes**

A.R.S. § 29-656.................................................................................................. 3

**Other Authorities**

1 Robert D. Sack, *Sack on Defamation* § 2.4.1 (4th ed. 2012) ................................. 11

REVISED ARIZONA JURY INSTRUCTIONS ("RAJI") (Civil) 5th, Defamation 3 Instruction

(Truth) ........................................................................................... 14, 15

W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 111 (5th ed. 1984).............. 11

**Rules**

Ariz. R. Civ. Proc. 4.2(a) ....................................................................... 4

Fed.R.Civ.P. 12(b)(6).......................................................................... 1, 10

## I.  **BACKGROUND**

Just as restaurateurs do not like negative reviews on Yelp, and movie studios do not like "thumb's down" movie reviews, Plaintiff's complaint is rooted in his unhappiness with a negative review by Defendant James Stanton regarding Plaintiff's company, its video game products, and its business practices in general.  In each of these cases, expressing an opinion about the business of another is protected speech for which libel cannot be found.

Mr. Stanton is a video game critic, pundit, and entertainer operating his business under the pseudonym Jim Sterling. (Exhibit A, Declaration of James N. Stanton, ¶ 6.)  Mr. Stanton reviews video games online and discusses current issues surrounding video games, often advocating for customer rights and admonishing decisions made by large game manufacturers. (*Id.*)  He distributes his commentary and criticism through a weekly YouTube video series, *The Jimquisition*. (*Id.*, ¶ 7.)  Mr. Stanton also operates *Best of Steam Greenlight Trailers,* where he watches and comments on poorly made video games or games that have been sold using unaltered, pre-purchased assets (for which he coined the now popular term "asset flipping"). (*Id.*)  He also plays and reacts to different games released on Steam, a video game distribution network. (*Id.*, ¶ 8.)  Mr. Stanton also produces *itch.io tasty*, an online channel where he plays and comments on various video games available from the game distributor itch.io. Mr. Stanton also produces *Nitpick Theater*, a comical series featuring exaggerated rants about minor inconveniences. (*Id.*, ¶ 10.) Mr. Stanton expresses an interest in social issues through his work, often speaking in favor of more diversity within the game industry and its products. (*Id.*, ¶ 11.) Mr. Stanton provides all of his services from his principal and only place of business in Brandon, Mississippi. (*Id.*, ¶ 19; Doc. 1, Compl. ¶ 2.)

Plaintiff James Romine is a citizen and resident of Arizona. (Doc. 1, Compl. ¶ 1.) Plaintiff and his brother, Robert Romine, reside in Yuma, Arizona, and are managing members of Digital Homicide Studios L.L.C., an Arizona limited liability company ("DHS") (Exhibit A, ¶ 26.)  DHS is a video game developer that has distributed its games through the Steam service, some of which have been reviewed online (sometimes unfavorably) by Mr. Stanton. (*Id.*, ¶ 28.)

On November 1, 2014, Mr. Stanton posted a "first impression video" of his unfavorable review of DHS's *The Slaughterhouse Grounds*. (*Id.*, ¶ 29.) In response, DHS reposted Mr. Stanton's video with subtitles responding to and refuting Mr. Stanton's commentary. (*Id.*, ¶ 30.) Afterwards, Mr. Stanton posted a rebuttal video with commentary. (*Id.*) Thereafter, DHS responded with a copyright infringement claim and a take-down notice to the web site hosting company. (*Id.*) The issue was resolved in favor of Mr. Stanton and the video review remains online. (*Id.*) However, DHS remains unhappy with the negative review. (*Id.*)

In a renewed effort to disrupt Mr. Stanton's business and quell his commentary, Mr. Romine filed the present lawsuit containing ten (10) separate "counts" of libel per se and libel per quod and seeking over $10 million in damages.[1] Plaintiff's libel claims are rooted in online commentary and criticism by Mr. Stanton concerning DHS's products and the methods through which it distributes its games. The alleged libelous statements are in an article written by Mr. Stanton that appeared online on September 24, 2015 (the "Article"). A copy of the Article, with annotations to assist the Court, is attached as <u>Attachment 1</u> to Mr. Stanton's declaration (<u>Exhibit A</u>). Plaintiff's claims also relate to two Tweets regarding the Article sent by Mr. Stanton, which are shown on <u>Attachment 2</u> to <u>Exhibit A</u>.

Defendant now moves to dismiss this case on three grounds. First, the alleged libelous statements are about DHS and its products and business practices and <u>not</u> Plaintiff Romine, who is only a manager of DHS. Thus, as only a manager of DHS, Plaintiff Romine lacks standing to pursue these claims. Second, Mr. Stanton is not subject to personal jurisdiction in Arizona because he has not had sufficient minimum contacts with Arizona so that maintenance of the suit in Arizona does not offend traditional notions of fair play and substantial justice. Finally, the alleged libelous statements are protected commentary and opinion that are either

---

[1] On April 13, 2016, Mr. Romine filed an Amended Complaint with <u>13 counts</u> of libel seeking <u>$15,498,775</u> in damages. [Doc. 9.] On April 15, 2016, the Court struck the Amended Complaint because it did not comply with Rule 15(a)(2) or Local Rule 15.1(a). [Doc. 10] On April 27, 2016, Mr. Romine filed a Motion for Leave to file a different Amended Complaint with <u>12 counts</u> of libel seeking <u>$12,550,000</u> in damages. [Doc. 11.]

-2-

1  not capable of being proven true or false or, if proven false, are not actionable because the

2  statements are incapable of conveying a defamatory meaning.

3  **II.**     **PLAINTIFF DOES NOT HAVING STANDING.**

4          A limited liability company is a legal entity that is separate and distinct from its

5  members, and an injury to an LLC is not the same as an injury to its members.   A.R.S. § 29-

6  656 provides that "[a] member of a limited liability company, solely by reason of being a

7  member, is not a proper party to proceedings by or against a limited liability company unless

8  the object is to enforce a member's right against or liability to the limited liability company."

9          Accordingly, only Digital Homicide Studios L.L.C. ("DHS") can assert claims for

10  damages allegedly incurred as a result of Defendant's alleged conduct.  It appears Plaintiff is

11  arguing that the Court should do something akin to "piercing the corporate veil" of the LLC to

12  allow him to assert the damages of DHS that were allegedly caused by Defendant. Plaintiff has

13  cited to no authority or test that would allow the Court to pierce the corporate veil in such a

14  situation. Accordingly, DHS is the proper party to assert any claims against Defendant and

15  Plaintiff does not have standing to do so.

16          A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to

17  relief on the legal rights or interests of third parties." *Valley Forge Christian College v.*

18  *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982). In the

19  Complaint, Mr. Romine claims that "products and advertising lost to The Plaintiff exceeds $2

20  million in market value at the time of damages" and lists 10 products and two pack/bundles

21  that could have been formed with these games. (Doc. 1, Compl. ¶ 2.)  In the Prayer for Relief

22  Mr. Romine seeks, among other damages, "Full reimbursement for 5 years of lost product

23  value at the per game value at time of loss: $19,000 per product at 12 products for 5 years =

24  $1,140,000" and "Half reimbursement for trailing depreciating product value for the 5th to 10th

25  years of product life: $9,500 per product at 12 products for 5 years = $570,000." (*Id.*, p.17)

26  Sales of these games are made by DHS and not James Romine.  Mr. Romine cannot rest his

27  claim for relief on the rights of DHS and damages allegedly sustained by this LLC.

28          Thus, this case should be dismissed for Plaintiff's lack of standing.

### III.   **THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT**

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002), citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the U.S. Constitution. *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant as long as doing so accords with constitutional principles of due process. *Id.*

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984) (citation omitted). If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court may exercise either "general" or "specific" jurisdiction over an out-of-state defendant. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). General jurisdiction refers to the authority of a court to exercise jurisdiction even where the cause of action is unrelated to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414 n.9. Specific jurisdiction exists when a suit arises out of, or is related to, the defendant's contacts with the forum. *Id.* at 414 n.8.

### A.   **The Court Does Not Have General Jurisdiction over Defendant**

A court may assert general jurisdiction over a defendant if the defendant's activities in the state are substantial or continuous and systematic, even if the cause of action is unrelated to those activities. *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050-51 (9th Cir. 1997), *quoting Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).

Here, there are no facts alleged supporting general jurisdiction over Mr. Stanton. Mr. Stanton is not engaged in any activities in Arizona that could be considered substantial or continuous and systematic.  Mr. Stanton is a resident of Mississippi with his principal and only place of business in Brandon, Mississippi. (*Id.*, ¶ 19.)   Mr. Stanton does not conduct any business in Arizona. (*Id.*, ¶ 20.)  Mr. Stanton does not own real estate, personal property or other assets in Arizona. (*Id.*, ¶ 21.) Mr. Stanton maintains no offices, employees, equipment, records, accounts, salespersons, or agents in Arizona. (*Id.*, ¶ 22.) In fact, Mr. Stanton has never been to Arizona. (*Id.*, ¶ 24.)  Accordingly, Mr. Stanton does not have such continuous and systematic contacts with Arizona to be subject to general personal jurisdiction in this state.

## B.    The Court Does Not Have Specific Jurisdiction over Defendant

The Ninth Circuit applies a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction. Under this three-part test, specific jurisdiction exists only if: (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *See. e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell. Inc. v. Cybersell, Inc.* 130 F.3d 414, 417 (9th Cir. 1997)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If a plaintiff satisfies the first two burdens, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

Plaintiff has not satisfied the first two prongs of the test.  In libel cases, the Supreme Court has held that a court may have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 788-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  Under the *Calder* test, personal jurisdiction is based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered--and which

the defendant knows is likely to be suffered--in the forum state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993). To be clear, the focus is on the contacts the defendant has with the forum state itself, <u>not with persons residing in the forum state</u>.

Plaintiff mistakenly focuses his personal jurisdiction allegations on the fact that Plaintiff resides in Arizona and, thus, Defendant should have known that any damage from alleged libelous statements would be felt by Plaintiff in Arizona. (Doc. 1, Compl, ¶ 2d.)  However, the "effects test" is not this broad.  The Ninth Circuit Court of Appeals has observed that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction." *Bancroft,* 223 F.3d at 1087. Purposeful direction requires "something more" than mere foreseeability in order to justify the assertion of personal jurisdiction over the out-of-state defendant. *Id.*

Tort-based personal jurisdiction was most recently addressed by the U.S. Supreme Court in *Walden v. Fiore,* 571 U.S. ___, 134 S. Ct. 1115, 2014 WL 700098 (2014).  In *Walden*, a Georgia police officer searched plaintiffs in Georgia and seized a large amount of cash. Plaintiffs claimed that after they returned to their Nevada residence, Walden helped draft a false probable cause affidavit in support of forfeiture. No forfeiture complaint was ever filed and the funds were returned. Plaintiffs filed a tort suit against Walden in a Nevada District Court. The district court dismissed, finding that the Georgia search and seizure did not establish a basis for personal jurisdiction in Nevada, even though that is where the Plaintiffs lived. The Ninth Circuit reversed, reasoning that Walden submitted the affidavit with the knowledge that it would affect persons with significant Nevada connections.

The Supreme Court reversed the Ninth Circuit. In a unanimous decision the Court found there was no jurisdiction in Nevada, holding that "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the <u>forum</u> in a meaningful way." *Walden*, 2014 WL 700098, at *7 (emphasis added).  The Court relied on *Calder* and its precedent emphasizing the defendant's connection to the forum, not the plaintiff's, when considering whether specific jurisdiction may be asserted.  For a state to exercise jurisdiction consistent with due process, a relationship must arise out of contacts

that the defendant himself created with the forum itself, <u>not with persons residing there</u>. The plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum.  *See Burger King v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"); *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U. S. 84, 93, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (declining to "find personal jurisdiction in a State . . . merely because [the plaintiff in a child support action] was residing there").  Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State. *Burger King*, 471 U. S. at 475 (internal quotation marks omitted); *Walden*, 2014 WL 700098, at *10.

Like Walden, Mr. Stanton lacks the "minimal contacts" with Arizona supporting personal jurisdiction. None of the alleged wrongful conduct occurred in Arizona, and Mr. Stanton formed no jurisdictionally relevant contacts with Arizona.  The Complaint alleges that "The Defendant sells merchandise which he profits from in the State of Arizona through online sale." (Doc. 1, Compl. ¶ 2a.)  It also is alleged that Defendant advertises his website "through his YouTube and other media outlets which is visible to viewers inside the State of Arizona and this advertisement and financial contact directly leads viewers in Arizona to the libelous statements involved in this case." (*Id.* ¶ 2f). However, Mr. Stanton profits through online support donations (not "sales") and nationwide advertising on the Internet in general.  To establish specific jurisdiction, a defendant operating an interactive website must direct "something more" than just the website to the forum state. *See Bancroft*, 223 F.3d at 1087; *see also George Kessel Int'l, Inc. v. Classic Wholesales, Inc.*, No. CV-07-323-PHX-SMM, 2007 WL 3208297, at *4 (D. Ariz. Oct. 30, 2007) ("An internet advertisement alone is insufficient to subject a party to jurisdiction in another state; there must be 'something more' to demonstrate that the defendant directed activity toward the forum state." (citation omitted)).  Additionally,

this lawsuit is not even related to the alleged forum-related activities of making online sales and receiving donations or support from Arizona residents.

Plaintiff also asserts that Defendant purposefully availed himself of the privilege of doing business in Arizona by selling subscriptions to his services for minimum $1 per month, of which there are almost 4,000 subscribers, "some of which are in The State of Arizona causing continual periodic financial contact with the State." (Doc. 1, Compl. ¶ 2b.)  However, Mr. Stanton does not sell anything in Arizona or to the State of Arizona. He produces videos and articles in Mississippi and his audience can choose to donate to him on Patreon, a crowdfunding site for artists and creators. (See Exhibit A, ¶ 14.)  This audience is worldwide and has no specific or majority basis in Arizona. (*Id.*, ¶ 17.)   Mr. Stanton's business is supported entirely be crowd funding, meaning that individuals voluntarily elect to support Defendant's business through donations. (*Id.*, ¶ 13.)   A donation is not required in order to access Mr. Stanton's reviews, videos and online content. (*Id.*, ¶ 15.)  Mr. Stanton does not solicit donations from any particular state or jurisdiction and is not aware if individuals from the State of Arizona have or have not donated to support Mr. Stanton's business.  (*Id.,* ¶ 16.)  However, even if there are donors from Arizona or content viewers from Arizona, that does not constitute "something more" showing Mr. Stanton purposefully directed activity toward Arizona. Plaintiff has not shown that Mr. Stanton specifically targeted Arizona residents with his services, nor is the alleged (non-existent) $1.00 subscription fee enough to overcome the "something more" hurdle on its own, even if such subscriptions were the subject of the claims.

Plaintiff also alleges "The Defendant has directed damaging statements at The Plaintiff causing in excess of $2,000,000 damages to the Plaintiff, an Arizona resident… The Defendant knew or should have known that the statements would cause damage and that such damage would occur in Arizona." (Doc. 1, Compl. ¶ 2d)[2]   However, as explained in *Calder* and *Walden*, the fact that Plaintiff is located in Arizona and that the "brunt of the harm" is felt by Plaintiff in Arizona is not sufficient to confer personal jurisdiction over Defendant.  There is no

---

[2] Plaintiff also cites 42 U.S.C. § 1985, Conspiracy to interfere with civil rights, which is a statute inapplicable to this case.

evidence that the alleged libelous statements were directed to the State of Arizona, as opposed to being directed at Plaintiff, who happens to reside in Arizona.  While in *Calder* the events underlying the alleged libelous story occurred in California and the story was researched through California sources, here the alleged libel concerned DHS products that were distributed worldwide through Steam, an entity located in the State of Washington. (Exhibit A, ¶ 8.) It has not been alleged that DHS products reached Defendant other than through the ordinary stream of commerce. Unlike in *Calder*, therefore, the alleged libel cannot be seen as a comment on an Arizona event. Rather, it is a comment on video games made available by DHS worldwide on the Internet through Steam, a video game distribution service, including to Defendant's home state of Mississippi and elsewhere.  Moreover, while any article written in the *National Enquirer* might be directed at a California audience (as in *Calder*), here, by contrast, Defendant's website and YouTube channel are available worldwide.  It has not been alleged that Arizona was a primary audience for the commentary or that Defendant knew that Plaintiff lived in Arizona.

Furthermore, unlike in *Calder*, it is unclear whether the brunt of the alleged harm has been suffered in Arizona. Calder involved alleged libel against an individual. This case involves an allegation of libel against a limited liability company in a suit that has wrongly been brought by an individual manager of that company.  A limited liability company does not suffer harm in a particular geographic location in the same sense that an individual does. The harm from an allegedly libelous statement is not necessarily suffered in the place of incorporation or organization.  *Core-Vent*, 11 F.3d at 1486*, citing *Casualty Assurance Risk Insurance Brokerage Co. v. Dillon*, 976 F.2d 596, 599-600 (9th Cir. 1992).

In summary, mere injury to an Arizona resident is not a sufficient connection to the forum for Mr. Stanton to be subject to personal jurisdiction in Arizona. The alleged injury occurred in Arizona simply because that is where plaintiff chose to reside.  Arizona was not the focal point of the alleged injury or a location of harm foreseeable to Mr. Stanton and Mr. Stanton did not expressly aim the alleged defamatory statements at Arizona.  *See, e.g., Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (no jurisdiction in Louisiana over a

1   California defendant where, even though the defendant knew plaintiffs engaged in some

2   activity in Louisiana, he never mentioned Louisiana explicitly or implicitly in the article, nor

3   did he refer to specific actions taken in Louisiana); *see also Clemens v. McNamee*, 615 F.3d

4   374, 378-79 (5th Cir. 2010) (declining personal jurisdiction because, even though the

5   defendant knew harm would result in Texas, Texas was not the focal point of the alleged

6   defamatory statement).

7   Because Arizona was not the focal point of the alleged libelous statements, Mr. Stanton

8   is not subject to personal jurisdiction in Arizona.

9   **IV.   DEFENDANT HAS FAILED TO STATE A CLAIM FOR LIBEL**

10   Defendant also requests that the Court dismiss the complaint for failure to state a claim

11   upon which relief can be granted. A complaint should be dismissed pursuant to Fed.R.Civ.P.

12   12(b)(6) when, accepting all well-pleaded allegations of fact as true, and drawing all

13   reasonable inferences in favor of the plaintiff, no relief could be granted under any set of facts

14   that might be proved. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d

15   80 (1957).

16   Plaintiff has failed to state a claim for libel.  Libel is the written form of defamation.  In

17   Arizona, the elements of a defamation claim are: a false statement concerning the plaintiff;

18   the statement was defamatory; the statement was published to a third party; the requisite fault

19   on the part of the defendant; and the plaintiff was damaged as a result of the statement. *Morris

20   v. Warner*, 160 Ariz. 55, 62, 770 P.2d 359, 366 (App. 1988).

21   "'To be defamatory, a publication must be false and must bring the defamed person into

22   disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or

23   reputation.'" *Turner v. Devlin*, 174 Ariz. 201, 203-04, 848 P.2d 286, 288-89 (1993), *quoting

24   Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989).

25   Plaintiff has plead both libel per se and libel per quod.  According to Arizona law, libel

26   and slander are classified as either per se or per quod. *Boswell v. Phoenix Newspapers, Inc.*,

27   152 Ariz. 1, 730 P.2d 178, 183 n.4 (App. 1985). A communication is libel per se if on its face

28   it tends "to impeach one's honesty, integrity, or reputation." *Id.* If a communication "is libelous

-10-

only by considering extrinsic information, then it is considered libel per quod." *Id.* Libel per quod requires a plaintiff plead pecuniary damages, while libel per se does not.

"The trial court decides, in the first instance, whether, under all the circumstances, a statement is capable of bearing a defamatory meaning. The jury then decides whether the defamatory meaning of the statement was in fact conveyed." *Yetman v. English*, 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991) (internal citation omitted). Insulting or offensive statements are typically insufficient. *Tennenbaum v. Ariz. City Sanitary Dist.*, No. CV-10-02137-PHX-GMS (D. Ariz. 2013), citing W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 111 (5th ed. 1984). Something beyond insult is required: "A judge and jury will probably require that a statement be derogatory, degrading, and somewhat shocking, and that it contain elements of personal disgrace; they will not waste their time with mere slights or insults." *Id.*, citing 1 Robert D. Sack, *Sack on Defamation* § 2.4.1 at 2-18 (4th ed. 2012) (internal quotation marks omitted). "A court is not required to strain and stretch the meaning of the statements in order to unearth some potential defamatory meaning." *Id.*, citing *Lawrence v. Evans*, 573 So. 2d 695, 698 (Miss. 1990) ("If the reader must struggle to see how and whether they defame, by definition the words are not defamatory in law. Words which may be found defamatory only with the aid of 'a most vivid imagination' are not actionable.").

### A.  The Court May Take Into Account Material Not Alleged in the Complaint

Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion, are actionable as defamation. *See Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002). "The issue of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court to decide." *Id.* at 985 (internal citations omitted).   When determining whether a statement can reasonably be interpreted as a factual assertion, the Court must examine the "totality of the circumstances in which it was made." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) (noting the court should consider allegedly defamatory statement both "in its broad context [including] the general tenor of the entire work, the subject of the statements, the setting, and the format of the work," and in its "specific context and content of the statements, analyzing the extent of figurative or

1    hyperbolic language used and the reasonable expectations of the audience in that particular

2    situation").

3         Context matters. "Isolated statements lifted from a longer communication will not do.

4    'It is true that a defamatory meaning must be found, if at all, in a reading of the publication as a

5    whole.'" *Tennenbaum, supra*, citing *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040

6    (9th Cir. 1998) (interpreting California law). In addition, it is appropriate to examine the

7    statements' target audience. *See Rudin v. Dow Jones & Co.*, 557 F. Supp. 535, 543-46

8    (S.D.N.Y. 1983).

9         Thus, the Court may deviate from the general rule that courts, when ruling on a motion

10   to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in

11   documents attached to the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

12   F.2d 1542, 1555 n.19 (9th Cir. 1990). This approach is permissible under the "incorporation by

13   reference" doctrine, which permits the Court to take into account documents "whose contents

14   are alleged in a complaint and whose authenticity no party questions, but which are not

15   physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183

16   F.3d 970, 986 (9th Cir. 1999); *see also Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)

17   (taking into account newspaper article containing allegedly defamatory statement under the

18   "incorporation by reference" doctrine where it was "central" to plaintiff's claim, defendant

19   attached it to the motion for judgment on the pleadings, and plaintiff did not contest its

20   authenticity).

21        Plaintiff attached to his complaint only a few select paragraphs from the Article and

22   Twitter pages where the alleged libelous statements were made, but did not include the entire

23   content of the pages or the surrounding pages that viewers accessing the content could not help

24   but see.  Attached to Defendant's Declaration (<u>Exhibit A</u>) are copies of the pages surrounding

25   the alleged statements (<u>Attachments 1 and 2</u>), which should be taken into account by the Court

26   under the "incorporation by reference" doctrine.

27

28

1    **B.      Determining Whether a Statement is an Assertion of Fact**

2    The threshold question in a defamation action is whether a reasonable factfinder could

3    conclude that the statement "impl[ies] an assertion of objective fact." *Milkovich v. Lorain*

4    *Journal Co.*, 497 U.S. 1, 10, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990). A statement that

5    does not contain an express or implied assertion of verifiable fact is not actionable. *Id.* at 20

6    (not defamatory if statement "cannot 'reasonably [be] interpreted as stating actual facts' about

7    an individual.").

8    The Ninth Circuit has a three-part test to determine if a statement is an assertion of fact.

9    *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). In making the determination the

10   court looks to (1) whether the language at issue is "figurative" or "hyperbolic," (2) whether the

11   general tenor of the statements negates the initial impression, and (3) whether the assertion is

12   capable of being proven true or false. *Id.* Statements of rhetorical hyperbole are not actionable

13   as "[t]he law provides no redress for harsh name-calling." *Flowers v. Carville*, 310 F.3d 1118,

14   1127 (9th Cir. 2002).

15   To determine whether a statement is an assertion of fact, the court must look at the

16   "broad context" of the alleged libelous statements, which includes "the general tenor of the

17   entire work, the subject of the statements, the setting, and the format of the work."

18   *Underwager*, 69 F.3d at 366.  Here, the broad context of all of Defendant's work, including the

19   Article and Tweets complained about, is reviewing and providing information and commentary

20   on video games and video game producers (like DHS) to video game players and enthusiasts

21   based on information Mr. Stanton discovers or receives from third parties.

22   Next, the Court turns to the specific context and content of the statements, analyzing the

23   extent of figurative or hyperbolic language used and the reasonable expectations of the

24   audience in that particular situation. A writer's use of "loose, figurative" language can

25   determine whether the statement can reasonably be interpreted as a factual allegation. In

26   *Standing Comm. on Discipline of the United States Dist. Court v. Yagman*, 55 F.3d 1430 (9th

27   Cir. 1995), the Ninth Circuit Court of Appeals held that an attorney could not be sanctioned for

28   accusing a district judge of being "dishonest" because the other terms the attorney used to

-13-

describe the judge — "ignorant," "ill-tempered," "buffoon," "sub-standard human," and "right-wing fanatic" — made it clear that the attorney intended only to signal his general contempt for the judge, rather than to accuse him of corruption. *Id.* at 1440.

Finally, the Court should inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.  If the statement cannot be proven true or false it cannot be libel.  "Truth is a complete defense to a defamation claim. Slight inaccuracies do not make a statement false if the statement is substantially true." REVISED ARIZONA JURY INSTRUCTIONS ("RAJI") (Civil) 5th, Defamation 3 Instruction (Truth).

## C. The Article and Twitter Statements Are Not Defamatory

When viewed with an eye on the legal requirements for proving libel, none of the statements in the Article or on Twitter are defamatory. Defendant James Stanton is a well-known online video game reviewer, with approximately 133,000 Twitter followers and 250,000 viewers per weekly episode of *The Jimquisition*. (Exhibit A, ¶¶ 6 & 12.)   On November 1, 2014, Mr. Stanton published his first impressions video of *The Slaughtering Grounds*, a game produced by DHS and distributed on the Steam gaming service.[3] (*Id.*, ¶ 29.) Later, Mr. Stanton came upon two Steam games produced under the name "ECC Games" – *Galactic Human* and *Devil's Share*.  (*Id.*, ¶ 31.)  Mr. Stanton noticed similarities between the later "ECC Games" products and the earlier DHS *The Slaughtering Grounds* game. (*Id.*, ¶ 32.) Based on similar content and artwork, Mr. Stanton concluded that the "ECC Games" had originated from DHS, but were being distributed under an alias name.  (*Id.*)  Mr. Stanton also discovered that "ECC Games" is actually the name of a real gaming company located in Poland. (*Id.*, ¶ 33.)  The real ECC Games contacted Mr. Stanton to make clear to him and his followers that they had no connection with the games being distributed by DHS under the "ECC Games" moniker. (*Id.*, ¶ 34.)  Mr. Stanton then wrote the Article about the alias "ECC Games," how the "ECC Games" games appear to originate from DHS, how DHS was able to

---

[3] Mr. Stanton's negative review of *The Slaughtering Grounds* is not the subject of the present libel lawsuit, though it was likely a catalyst for Plaintiff's decision to sue Defendant regarding subsequent statements.

distribute games through Steam using an alias that was the name of a legitimate gaming company unrelated to DHS, and how the real ECC Games company had told Mr. Stanton by email that it was taking legal action against DHS. (*Id.*, ¶ 36.)

The complete Article is attached as <u>Attachment 1</u> to <u>Exhibit A</u>. The email from ECC Games is at <u>Attachment 5</u> to <u>Exhibit A</u>. The Article is annotated to assist the Court by designating the particular sentences in the Article that serve as the basis for each of Plaintiff's claims. Plaintiff's claims also stem from two Tweets sent by Mr. Stanton in order to promote the Articles to his Twitter followers, which are shown on <u>Attachment 2</u> to <u>Exhibit A</u>. Statements from the Article and Tweets that are the subject of Plaintiff's lawsuit are highlighted below in bold, followed by analysis regarding why the statements cannot be libel and, thus, this case should be dismissed.

*It is important to note that Mr. Stanton discloses early on in the Article that his discoveries and conclusions are just that – discoveries and conclusions:* "Digital Homicide's latest shenanigans are confusing and based on several allegations, **so I cannot present everything in this article as verified fact."** (*See* <u>Attachment 1</u>, p.2.)

### 1.   <u>The Statement at "Count 1" is Not Libel Per Se</u>.

Plaintiff alleges the following statement from the Article is libel per se: **"It's also worth noting that *Galactic Hitman's* artwork has been taken from elsewhere, just like the initial art for *The Slaughtering Grounds* was."** (Doc. 1, Compl. ¶ 3.) For completion, the statement continues, **"You can see the original imagery here, which Faker-ECC may have purchased from Shutterstock. Does DH even have a single artist?"** A link is provided to the similar art. (<u>Attachment 1</u>, p.3.)

The alleged statement is not libel per se. In fact, the statement is true. "Truth is a complete defense to a defamation claim. Slight inaccuracies do not make a statement false if the statement is substantially true." REVISED ARIZONA JURY INSTRUCTIONS ("RAJI") (Civil) 5th, Defamation 3 Instruction. The statement questions whether DHS has any artists because it appears DHS purchased the original imagery from Shutterstock. It is a vague assertion of opinion that, in the context of a game review and with links for individuals to form

-15-

their own assessment of the artwork, is not sufficient to support a finding of defamation. *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 643 (Cal. Ct. App. 2001) (holding that "vague" assertions, such as claiming a company cares more about selling stock than running a legitimate business, are not sufficient to support a finding of defamation).

In context, the video game enthusiast reader would view this statement as the critic's opinion that the artwork in the game looks similar to artwork found elsewhere.   <u>In fact, Plaintiff admits that the artwork is not original artwork</u>, stating in the Complaint, "The initial Slaughtering Grounds art was not taken from this site [linked by defendant]. It was a free upload to a wallpaper site and was a derivative work, which when this was discovered that the artist did not have full rights to put it up for free, it was immediately removed."   (Doc. 1, Compl, ¶ 3.)  Thus, this statement of opinion regarding the artwork not being original – made as part of a game review – is true and cannot be libel per se.[4]

## 2. The Statements at "Counts 2-4" are Not Libel Per Se.

Plaintiff alleges the following statement from the Article is libel per se: **"Here, we've seen it lead to potential legal trouble for the folks who rebranded and accidentally defamed a completely different studio."[5]** (Doc. 1, Compl. ¶ 4.)  In context, the statement is clearly opinion and follows a discussion about DHS using the alias name "ECC Games" to publish the games *Devil's Share* and *Galactic Hitman*.  It is noted in the Article:

> A Polish mobile game company by the name of ECC Games reached out to me via email explaining it has absolutely no link to Digital Homicide, and its claim most certainly seems to check out. Its own website features a whole host of mobile games, along with a full-fledged team of Polish developers. **It also has a Twitter account which, prior to now, has no history of mentioning either *Devil's Share* nor *Galactic Hitman*.**[6]

---

[4] Plaintiff additionally complains that "The Article falsely states that The Plaintiff used an image that The Plaintiff did not have rights to."  However, this is not stated in the Article.

[5] Count 2's assertion of libel.

[6] Count 4's assertion of libel.

(*See* <u>Exhibit A</u>, <u>Attachment 1</u>, pp.4-5; Doc. 1, Compl, ¶ 6).  The fact that the Twitter account of ECC Games has no history of mentioning either *Devil's Share* nor *Galactic Hitman* is a true statement not disputed by Plaintiff.  It cannot be libel per se.

In an email from ECC Games producer Dorota Muzynska, the company writes to Mr. Stanton, "We would like to inform that we are not designers nor producers of Galaxy Hitman nor Devils Share, games that have been published on Steam….We probably fell victim to a people previously known as Digital Homicide. We have already taken legal actions aimed at ceasing infringement of ECC GAMES rights." (*See* <u>Exhibit A</u>, <u>Attachment 5</u>)

Thus, in context, the Article reports and warns users that the "ECC Games" purporting to distribute *Devil's Share* and *Galactic Hitman* is <u>not</u> the known ECC Games of Poland, but rather DHS acting under the pseudonym ECC-GAMES.

The Article continues with the author's criticism of the Steam service, which does not validate the identity of its game producers:

> When you can name yourself literally anything on Steam, it's impossible to know who is a legitimate developer and who isn't, as we've seen with the case of Faker-ECC. **Apparently you don't need to prove your company's legitimacy or even existence, since it's all based on usernames.**[7] Here, we've seen it lead to potential legal trouble for the folks who rebranded and accidentally defamed a completely different studio.

(See <u>Exhibit A</u>, <u>Attachment 1</u>, p.5; Doc. 1, Compl. ¶ 5.)

In context, the above statements are clearly opinion and based in fact.  The Article reports that if a company adopts a name that is not its own, its risks potential legal trouble by a different studio operating under the same name.  The Article reports that a Polish company also called ECC Games was concerned about DHS's use of the name ECC Games and that they "have already taken legal actions aimed at ceasing infringement of ECC GAMES rights."  The Article also expresses the opinion regarding Steam and concern that "apparently" a Steam user

---

[7] Count 3's assertion of libel.

-17-

does not need to prove its company's legitimacy or existence since the Steam system is based only on usernames.

None of the statements at "Counts 2-4" are libel per se.  A reasonable reader would *not* understand the above statements as asserting a statement of verifiable fact. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 861-62 (9th Cir. 1999) (stating that the threshold question in a defamation suit is whether "a reasonable factfinder [could] conclude that the contested statement implies an assertion of objective fact"). "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20; *see also Letter Carriers v. Austin*, 418 U.S. 264, 285-86, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (accusing plaintiffs of "rotten principles" not actionable). This is especially true where the statement was "made in public debate . . . or other circumstances in which 'an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole." *Lewis v. Time Inc.,* 710 F.2d 549, 553 (9th Cir. 1983); *See also Underwager,* 69 F.3d at 366-367 (comments made in context of heated debate would be viewed as spirited critique and audience would expect emphatic language on both sides).

Additionally, the statement in "Count 3" begins with the word "apparently," which clearly connotes an opinion and not fact.  Plaintiff himself does not allege that this statement is false, but only "misleading" because many businesses use false monikers.  Plaintiff does not deny the use of a false name by his company, DHS, but instead defends such conduct by noting that others do it, including Defendant, who uses the trade names Jim Sterling and The Jimquisition.  (Doc. 1, Compl. ¶ 5.)  The fact that many people use trade names in the gaming area supports the statement's warning that "When you can name yourself literally anything on Steam, it's impossible to know who is a legitimate developer and who isn't…." (*See* Exhibit A, Attachment 1, p.5)

Finally, the statement in "Count 4" is a statement regarding research by Defendant where he found a Twitter account for the Polish ECC Games company and "no history of

1  mentioning either *Devil's Share* nor *Galactic Hitman*." There is nothing false or defamatory

2  about this statement.

3  **3.   The Statement at "Count 5" is Not Libel Per Se.**

4  Plaintiff alleges the following statement from the Article is libel per se: **"[The studio's**

5  **recent] chicanery may lead it into very real legal trouble."**  (Doc. 1, Compl. ¶ 7.)  In

6  context, the statement relates to DHS's use of the name ECC Games – already associated with

7  a Polish gaming company – to identify its own products.  The statement notes that this

8  behavior may lead DHS into legal trouble.

9  The referenced statement is clearly opinion, but also true.  Plaintiff defends by alleging

10 "this statement is false because there was no attempt to impersonate another company. The

11 company supposedly (ECC Games) impersonated is incorporated in Poland and has no legal

12 right to that name in the United States as they are not registered in any US State and have no

13 official Trademark registered with the USPTO. It would have been legally open for usage in

14 the United States…"  (Doc. 1, Compl. ¶ 7.)

15 Even if Plaintiff did not *intend* to impersonate Polish ECC Games, any reputable

16 trademark attorney would tell you that using the name of a gaming company with existing

17 sales in the United States, in order to identify your own competing gaming products, is a bad

18 idea that "may lead… into very real legal trouble." Only statements which may be reasonably

19 interpreted as factual assertions, not simply statements of opinion, are actionable as

20 defamation. *See Rodriguez*, 314 F.3d at 986.  The word "chicanery" is a statement of rhetorical

21 hyperbole and not actionable as "[t]he law provides no redress for harsh name-calling."

22 *Flowers*, 310 F.3d at 1127.

23 **4.   The Statement at "Count 6" is Not Libel Per Quod.**

24 Plaintiff alleges the following statement from the Article is libel per quod: **"Being as sly**

25 **as the Wet Bandits,"** which "compar[ed] The Plaintiff to an incompetent thief (reference to

26 the movie Home Alone)."  (Doc. 1, Compl., ¶ 8.)

27 Mr. Stanton is a writer.  A humorous comparison by Defendant of DHS to the "Wet

28 Bandit" characters from a well-known holiday movie about bumbling thieves is humorous,

-19-

figurative and hyperbolic and an assertion not capable of being proven true or false. Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion, are actionable as defamation. *See Rodriguez*, 314 F.3d at 986. Statements of rhetorical hyperbole are not actionable as "[t]he law provides no redress for harsh name-calling." *Flowers*, 310 F.3d at 1127. "A court is not required to strain and stretch the meaning of the statements in order to unearth some potential defamatory meaning." *Tennenbaum, supra*.

### 5.       The Statement at "Count 7" is Not Libel Per Quod.

Plaintiff complains at "Count 7" about Defendant's last name appearing in the Article as **"Romino" instead of "Romine,"** which was "attempting some form of relation to a mob or mafia family – a criminal reference." (Doc. 1, Compl. ¶ 9.)  Even if intentional and not simply an error, it is submitted that Plaintiff will never be able to show that the last name "Romino" is perceived by the public as having mob or mafia family connections or is a criminal reference to Plaintiff. Nor will Plaintiff be able to show that the use of "Romino" over "Romine" caused special damages required for an allegation of libel per quod.  In short, referring to someone by the last name "Romino," perhaps in an attempt at humor, is not libel. Statements of rhetorical hyperbole are not actionable as "[t]he law provides no redress for harsh name-calling." *Flowers*, 310 F.3d at 1127. "A court is not required to strain and stretch the meaning of the statements in order to unearth some potential defamatory meaning." *Tennenbaum, supra*.; *Lawrence v. Evans*, 573 So. 2d 695, 698 (Miss. 1990) ("If the reader must struggle to see how and whether they defame, by definition the words are not defamatory in law. Words which may be found defamatory only with the aid of 'a most vivid imagination' are not actionable.")

### 6.       The Statement at "Count 8" is Not Libel Per Se.

In "Count 8," Plaintiff complains that Defendant sent a Tweet with a link to the complained-of Article of September 24, 2015, the Tweet stating **"I wrote an article on everything we know about the Digital Homicide / ECC Games weirdness."** (Doc. 1, Compl. ¶ 10.)

The Tweet is factually accurate. Plaintiff did write the article and he did believe DHS's use of the "ECC Games" name to be "weirdness."  Only statements which may be reasonably

-20-

interpreted as factual assertions, not simply statements of opinion, are actionable as defamation. *See Rodriguez*, 314 F.3d at 986.  Plaintiff admits that DHS used the ECC Games name and acknowledges that it is used by a Polish gaming company unrelated to DHS. "Weirdness" is an appropriate and non-actionable opinion on this subject.

### 7.      The Statement at "Count 9" is Not Libel Per Se.

Still on the subject of DHS's use of the name "ECC Games" to identify its gaming products, Plaintiff complains that on September 24, 2015, Defendant Tweeted **"According to the email [from ECC Games], this ECC Games is pursuing legal action against Digital Homicide for using its name. Not enough popcorn on Earth."**  (Doc. 1, Compl. ¶ 11.)

The referenced Tweet is both factually true and a non-actionable statement of opinion. The email is attached hereto as <u>Attachment 5</u> to <u>Exhibit A</u>.  In the email, an individual from ECC Games writes to Defendant "We have already taken legal actions aimed at ceasing infringement of ECC GAMES rights."  Whether there is "not enough popcorn on earth" is a statement incapable of being proven true or false.  *Unelko Corp.*, 912 F.2d at 1053.

### 8.      The Statement at "Count 10" is Not Libel Per Se.

Still on the subject of DHS's use of the pseudonym "ECC Games" to identify its gaming products, Plaintiff complains that on September 24, 2015, Defendant Tweeted **"Jesus Christ, I just got an email from ECC Games saying they're NOT the ECC Games Digital Homicide named itself after. This is weeeeird."**  (Doc. 1, Compl. ¶ 14.)

The referenced Tweet is both factually true and a non-actionable statement of opinion. The email is at <u>Attachment 5</u> to <u>Exhibit A</u>.   In the email, an individual from ECC Games writes to Defendant "We would like to inform that we are not designers nor producers of "Galaxy Hitman" nor "Devils Share" games that have been published on Steam. We probably fell victim to a people previously known as Digital Homicide."  Whether or not the recipient of the email felt "this is weeeeird" is a statement incapable of being proven true or false.  *Unelko Corp.*, 912 F.2d at 1053.

**9.     The Statement at Second "Count 10" is Not Libel Per Se.**

Defendant is unable to locate or authenticate Exhibit R to the Complaint, which is referenced at the second "Count 10" at ¶ 19 (pg. 15) as containing statements that are libel per se.  However, reading the alleged statement in context shows that the statement is not libelous.  The statement is clearly opinion that DHS is a bad game developer with a history of shady and dishonest behavior.   Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion, are actionable as defamation. *See Rodriguez*, 314 F.3d at 986.  The referenced statement cannot be proven true or false.  Statements of rhetorical hyperbole are not actionable as "[t]he law provides no redress for harsh name-calling." *Flowers*, 310 F.3d at 1127.

**V.     CONCLUSION.**

In summary, none of the statements that form the basis for Plaintiff's libel claims are defamation under the law.  Furthermore, Plaintiff lacks standing to bring defamation claims on behalf of his company, Digital Homicide Studios, L.L.C. and Defendant is not subject to personal jurisdiction in Arizona.  This case should be dismissed.

RESPECTFULLY SUBMITTED this 4th day of May, 2016.

**HARTMAN TITUS PLC**

By:  /s/Bradley P. Hartman
                Bradley P. Hartman
                John D. Titus
                7114 E. Stetson Drive, Suite 205
                Scottsdale, Arizona 85251-3250
                Attorneys for Defendant

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on May 4, 2016, I caused the
3   foregoing document to be filed electronically with the
Clerk of Court through CM/ECF System for filing and
4   transmittal of Notice to the following CM/ECF registrant:

5

James Oliver Romine Jr.
6   12494 Ironwood Dr.
Yuma, AZ 85367
7   jromine2445@gmail.com
8   *Plaintiff*

9

10   /s/ Bradley P. Hartman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28